(77 N. W. Rep. 608.)

---

DAVID LANE vs. THOMAS O'TOOLE.

Opinion filed December 12, 1898.

**Claim and Delivery—Evidence of Ownership.**

In a claim and delivery action, the plaintiff sought to recover certain grain grown by defendant upon land upon which defendant had long resided. Plaintiff based his right to recover solely upon a certain written contract, which he put in evidence. At the trial defendant offered testimony to show that the contract under which the plaintiff claimed had, by a mutual understanding of the parties thereto, never gone into effect, and that the grain in question was not raised pursuant to the terms of such contract. This evidence was excluded. *Held,* that such ruling is prejudicial error.

Appeal from District Court, Pembina Count; *Sauter, J.*

Action by David Lane against Thomas O'Toole. Verdict for plaintiff. From an order denying a new trial, defendant appeals.

Reversed.

*Bangs & Guthrie,* for appellant.

*Bosard & Bosard,* for respondent.

WALLIN, J. This action was tried to a jury, and a verdict was directed in favor of the plaintiff. A motion for a new trial, based upon a statement of the case, was denied, and from the order denying the motion defendant appealed to this Court. No exception was taken to the instructions of the Court to the jury, nor did defendant except to the refusal of the Court to direct a verdict in defendant's favor, as the Court was requested to do at the close of the case. Nor can there be any review of the evidence in this case to determine whether the verdict is sustained by the evidence. After a careful consideration of the record, we confess our inability to

understand upon what theory of the evidence a verdict was directed in plaintiff's favor, but as the instruction to do so was not challenged by an exception, we are bound to assume, in support of the order denying a new trial, that the evidence warranted such instruction. The action is brought to recover the possession of a quantity of grain raised by the defendant in the year 1896 upon certain real estate described in the complaint, upon which defendant had continuously resided for many years, and upon which he resided at the time of the trial. The complaint alleges a general ownership of the grain; also a demand therefor. The answer denied these averments, and demanded judgment for a return of the property. The grain was taken by claim and delivery proceedings, and turned over to the plaintiff, and was not rebonded by the defendant. The plaintiff put in evidence a deed of conveyance of said land from one O. M. Omlie to plaintiff, which was executed December 4, 1895, and recorded on the 14th of the same month; also a certain written instrument, purporting to be a contract of purchase and sale, made November 20, 1894, between defendant and said O. M. Omlie for the land in question. As this contract furnishes the only ground upon which plaintiff claimed a right to the possession of the grain in question, we will here set out its terms: "This agreement, made and entered into this 20th day of November, 1894, by and between O. M. Omlie, party of the first part, and Thomas O'Toole, party of the second part, witnesseth: That the party of the first part, for and in consideration of the covenants and agreements of the second party hereinafter set out, all of which said covenants and agreements are to be strictly kept and fulfilled by the party of the second part, time being of the essence of this contract, the said party of the second part agrees that, upon the full and entire completion of all said covenants and agreements of said second party, in the time and in the manner as hereinafter set forth, to sell, transfer, and set over to the said party of the second part, by a good and sufficient deed, with the usual covenants of warranty, the following described real estate, lying and being in the County of Pembina and State of North Dakota, to-wit, the north half of the northeast quarter of section 21, and the west half of the northwest quarter of section 22, all in township one hundred and fifty-nine north, of range fifty-five west (N. $\frac{1}{2}$ N. E. $\frac{1}{4}$ Sec. 21, and W. $\frac{1}{2}$ N. W. $\frac{1}{4}$ Sec. 22, Twp. 159 N., R. 55 W.), and containing one hundred and sixty acres, more or less, according to the United States survey thereof. And the said party of the second part, for and in consideration of the covenants and agreements of the party of the first part above set out, agrees to take and hold the said real estate, and to purchase the same hereafter, in accordance with the conditions of this contract, of the said first party, and to pay therefor the sum of twenty-eight hundred dollars, to-wit: The sum of five hundred dollars, and interest on the whole sum of the purchase price, on or before November 1st, 1895; the sum of six hundred dollars, and interest on the unpaid portion of the purchase price, on or

before November 1st, 1896; the sum of seven hundred dollars, and interest on the unpaid portion of the purchase price, on or before November 1st, 1897; the sum of one thousand dollars, and interest, on the first day of November, 1898,—all of said sums bearing interest at the rate of twelve per cent. per annum, according to the conditions of four promissory notes, bearing even date herewith, for the amounts and due at the respective dates above set forth. And the party of the second part agrees to pay all taxes and assessments of every name, nature, and description that may be levied upon the said premises during each and every year subsequent to the year 1894. And it is further expressly stipulated and agreed, by and between the parties hereto, that no title or right to possession of the premises herein described passes to the party of the second part until after the full and entire completion of all the conditions and covenants and agreements, at the time and in the manner as herein set out, of this contract, by the party of the second part. And it is further stipulated and agreed that the title, right of possession, and ownership to the said premises are and shall remain in the party of the first part until the entire completion of the terms and conditions of this contract by the party of the second part, except that the party of the second part shall have the right to enter upon the said premises in the spring of 1895, and each succeeding spring, during the continuance of this contract, for the purpose of seeding the said premises to such crops as shall be mutually agreed upon by the parties hereto; and that, until the completion of the terms of this contract, this contract shall be construed to be a contract of rental of the said premises; and, upon the refusal or failure of the party of the second part to do and perform all the conditions of this contract at any time, the party of the first part shall have the right to declare this contract null and void, and no longer of any binding force and effect on the said party of the first part; and the party of the first part shall have the right to enter upon said premises at any time after declaring the contract forfeited, and to eject the party of the second part, and to take possession of all grain of any kind grown on such place during said year as such contract shall be declared forfeited, and out of the proceeds of the same to retain the payment and interest thereof to be made in such year as rental and liquidated damages for said year in which the contract is declared to be void and forfeited. And it is specially covenanted and agreed, by and between the parties hereto, that until the complete fulfillment of all the terms and conditions of this contract, that the title of all crops, hay grain, and vegetables raised and grown on the said premises shall be and remain in the party of the first part; and the party of the first part has the right to take and hold sufficient of the crop raised in any year to repay any and all advances made by the party of the first part to the party of the second part, or to any one for him. It is hereby stipulated and agreed that, upon the full and entire completion of all the conditions of this contract in the manner and at·

the time stipulated, time being of the essence of this contract, the party of the first part will, upon demand therefor by the party of the second part, make and deliver their certain warranty deed to the premises, and deliver the same to the party of the second part. In witness whereof the parties hereto have hereunto set their hands and seals the day and year first above written. O. M. Omlie. Thomas O'Toole. In presence of John Fraine."

It will be perceived that this contract was not entered into with the plaintiff personally, but if, at the time of the trial, the plaintiff was entitled to its benefits,—a point not covered by the record,— the plaintiff, under its provisions, was the absolute owner of the land, and entitled to the possession therof at all times, until the contract should be fulfilled. The contract, however, provides, that the defendant should have a right to enter upon the land annually for cropping purposes, and for such purposes the relation of the parties was that of lessor and lessee, and the contract was one of rental as to the annual crops to be raised by the defendant, although ultimately it was a contract of purchase and sale. The contract clearly contemplates that the defendant shall carry on his farming operations upon the land, and raise crops thereon, during the continuance of the contract; nor is there a stipulation in the agreement requiring the defendant to deliver or turn over to the lessor said crops, either in whole or in part, by way of rental or as installments on the purchase money for the land. It is true that under the contract the lessor has the right, conditioned upon the happening of certain events specified in the instrument, to take possession of crops, but there is no general right to the possession thereof secured to the lessor by the instrument. But, on the contrary, the contract evidently secures to the lessee the general right to the possession, and also the right to own and sell the crops, so long as he complies with the terms of the contract with respect to payments of purchase money. Under these circumstances, the general right of the defendant to the possession of the annual crops cannot be terminated until it is first shown that the contingencies, or some of them, upon which such right may be lost, have actually occurred. In other words, the lessor's right to the possession of such crops is conditional, and not absolute, and therefore the lessor would have the burden at the trial of showing the existence of the conditions named in the instrument. The record before us fails to disclose whether these conditions precedent to the right of possession were shown to exist, but, as this is a matter of evidence merely, the record will not permit this Court to rule upon the points suggested. But this record discloses that the defendant offered testimony at the trial tending to establish a state of facts which, if satisfactorily established, would wholly defeat the plaintiff's right of recovery under this instrument. This evidence was excluded, and the defendant has preserved an exception to the ruling. The defendant testified that he had raised the grain on the land in question, and that no demand therefor had ever been made upon him. He further testified, without objection,

as follows: "I have a suit pending with reference to the title of this land, in which I claim to be the owner of this land, against Omlie and Lane." The witness continued: "Mr. Lane never raised any crop on this land. I entered into a contract with reference to this land. Q. Did you ever start in and act on that contract,— I mean the one as to renting or leasing?" The plaintiff objected to this question as immaterial, incompetent and irrelevent; also on the ground that the answer might tend to contradict the terms of a written instrument. This objection was sustained, and the evidence was excluded. Defendant next offered to prove, by the same witness, that there was an understanding between the parties to this contract that the same should not be acted upon, and that defendant had been holding adverse possession of the land in question for 16 years, as against the plaintiff and all the world. This offer of testimony was excluded also, and upon the ground above stated. We are clearly of the opinion that these rulings involve error prejudicial to the defendant. It was essential to the plaintiff's case to show that the grain in question was raised by the defendant pursuant to the terms of the instrument under which the plaintiff sought to recover possession, and hence any evidence tending to establish this fact, or to disprove its existence, was directly pertinent to the isues. To disprove this fact, and show that plaintiff's contract gave no rights to the plaintiff, would defeat the recovery. When asked by his counsel whether he ever started in and acted on the contract, the defendant was not allowed to answer the question, and when the defendant offered to prove, by the same witness, that there was an understanding arrived at between the contracting parties, under which the contract was never acted upon, it was rejected at the instance of counsel for the plaintiff.

No one can anticipate what state of facts would have been developed if this testimony had been permitted to come into the case. But it certainly was proper for the defendant to show, by any competent and satisfactory evidence, that the grain in question was not raised under or pursuant to the terms of the contract. This could have been done by showing that the contract had itself been terminated by mutual consent, before the crop in question was planted; or by showing that after the execution of the contract, a new arrangement had been made between the contracting parties, whereby the terms of the contract had been superseded; or that some new arrangement had been made, under which defendant had raised the crop in question. The case of *O'Toole* v. *Omlie* (decided by this Court at the present term) 8 N. D. —, was pending in the District Court when the action at bar was being tried in the court below. In said other action it was decided, for reasons set out in the opinion of this Court, that the lease and sale contract in question here estopped Thomas O'Toole from asserting title to the land as against Lane, but it was further expressly held in that case that Lane took title from Omlie with full notice and knowledge of the existence and terms of said contract. Each case stands in this Court upon its

own issues and upon its record as made in the court below. Nothing is decided n this case which is in conflict with our decision in the other case. For the error involved in excluding the testimony above mentioned the verdict will be vacated, and a new trial granted. All the judges concurring.