O. M. OMLIE vs. THE FARMERS' STATE BANK.

Opinion filed October 12, 1899.

**Conversion—Evidence of Ownership.**

Under the evidence (following Lane v. O'Toole, 8 N. D. 210, 78 N. W. Rep. 77), *held*, that the plaintiff was not the owner of the wheat in question, and hence could not recover for its conversion.

**Verdict by Direction of Court.**

*Held*, further, that the trial court erred in denying defendant's motion to direct a verdict in defendant's favor.

Appeal from District Court, Pembina County; *Sauter*, J.

Action by O. M. Omlie against the Farmers' State Bank of St. Thomas. Verdict directed for plaintiff, and defendant appeals. Reversed.

*Wm. McMurchie* and *Gray & McMurchie*, for appellant.

Plaintiff neither owned the property, nor was he entitled to its possession at the time suit was commenced, hence could not maintain conversion. *Parker* v. *First National Bank*, 3 N. D. 87; *Ellestad* v. *N. W. Elev. Co.*, 6 N. D. 93; *Donovan* v. *St. A. & D. Elev. Co.*, 7 N. D. 521. The contract gives plaintiff no right to possession except upon a contingency, which the evidence shows had not arisen. *Black* v. *Elev. Co.*, 7 N. D. 129. The contract in suit was construed in *Lane* v. *O'Toole*, 8 N. D. 210. Plaintiff cannot in an action of conversion recover for the proceeds of the property converted. His action is in equity. *Anderson* v. *Bank*, 5 N. D. 89. The pleading must specify the property converted. *Russell & Co.* v. *Amundson*, 4 N. D. 112.

*Fraine & Douglas*, for respondent.

WALLIN, J. This action was tried to a jury. At the close of the case, on motion of plaintiff's counsel, the Court below directed a verdict in favor of the plaintiff, and such verdict was returned accordingly. An exception was saved to such direction, and the same is assigned as error in this Court. It appears of record that the verdict was directed "on the ground and for the reason that all the evidence in the case shows a conversion by the defendant, the Farmers' State Bank, of property of the plaintiff, the value of which was $246." The record shows the following facts, which are undisputed: In the month of October, 1895, there was stored in a certain grain elevator situated at Crystal, N. D., and owned by the firm of O'Conner Bros. & Grandy, a quantity of No. 1 Northern wheat, to-wit: 965 bushels. Said wheat had been placed in said elevator by one Thomas O'Toole, and a storage ticket had been issued therefor, and delivered to O'Toole. At and prior to the delivery of the wheat at the elevator, and while the storage ticket was in O'Toole's possession, O'Toole was indebted to the defendant

in a considerable sum, and was then being pressed for payment of the said indebtedness. Under these conditions O'Toole sold a portion of the wheat represented by the storage ticket, receiving in payment a check of O'Connor Bros., drawn upon the First Bank of Crystal, payable to defendant's order, which check, by O'Toole's direction, was delivered to the defendant. The defendant presented the check for payment, and it was paid by the bank upon which it was drawn. The amount of the check—$246—was credited upon O'Toole's indebtedness to the defendant. The complaint states "that on or about the 15th day of October, 1895, this plaintiff demanded, and caused to be demanded, from the defendant, through its cashier, at St. Thomas, North Dakota, the repayment to him of the money received by defendant, and that defendant neglects and refuses to deliver to the plaintiff the money so converted by the defendant." The complaint further charges "that said money so paid to the defendant was the proceeds of the property belonging to the plaintiff, and which money was the property of this plaintiff, as was at that time well known to the defendant"; and, further, that "the defendant unlawfully and without authority converted and disposed of said money to its own use and benefit, and to such extent did convert to its own use and benefit the storage ticket hereinbefore mentioned." In another connection the complaint alleges that the defendant, by its agent, "did, by means of threats, coerce and overpersuade the said Thomas O'Toole to have said wheat ticket cashed," and that "the wheat and the storage ticket at that time were, to defendant's knowledge, the property of the plaintiff." It is further alleged that in placing the grain in the elevator O'Toole acted as the plaintiff's agent, but there is no testimony whatever in the record tending to show that O'Toole, in placing the grain in the elevator did so at the request of the plaintiff, or pursuant to any directions given by plaintiff so to do. At the trial, there was much contention between counsel over the legal aspects of the case. Defendant's counsel sought by divers motions and objections to obtain a ruling which would limit and define the grounds of the action, but the Court below declined to so limit the plaintiff, and at the close of the case it is difficult to ascertain from the record the exact legal theory upon which plaintiff demanded a verdict. Whether the action was based upon conversion of the wheat itself, or a conversion of the storage ticket, or of the proceeds of the check, was far from being clear upon the record. From defendant's standpoint, the Court should have directed a verdict in its favor, and counsel for defendant requested the Court so to do, upon the ground, among others, that plaintiff had failed to establish any cause of action whatever against the defendant. This motion was overruled, and the defendant excepted to the ruling, and assigns the same as error here.

Counsel for respondent, in their brief filed in this Court, claim that the defendant and others converted the wheat itself by overpersuading and coercing O'Toole into selling the storage ticket representing the wheat, and that the defendant directly participated in

such conversion, and profited by it to the amount of the money it received out of the check. In disposing of the case this Court has not found it necessary to determine any question of mere procedure. We will assume, for the purposes of the case, and for the plaintiff's benefit, that the action will lie for converting the wheat, and that plaintiff can recover in this action if he has established the facts upon which he relies as a basis for recovery. The complaint states, in effect, that the plaintiff was the owner of the wheat and of the wheat checks, and that O'Toole acted solely as plaintiff's agent in placing the wheat in the elevator, and in receiving the storage ticket therefor. In brief, the plaintiff claims to recover upon the ground that he owned the grain. To establish such ownership, O'Toole was sworn in plaintiff's behalf, and testified, in substance, that the grain in question was raised by him in the year 1895, on certain premises upon which he then resided, and that he placed the grain in the elevator, and sold a portion of the same, and out of the proceeds caused $246 to be paid to the defendant to apply on his indebtedness. The plaintiff testified in his own behalf to the effect that the land upon which O'Toole resided, and upon which the wheat was raised, was occupied by O'Toole under the provisions of a certain sale contract therefor dated November 20, 1894, in which plaintiff was party of the first part, and O'Toole party of the second part. This contract was put in evidence, and under its terms the plaintiff claims the ownership of the wheat in question. An examination of the contract in evidence reveals the fact that the same is the identical instrument which received a construction at the hands of this Court in the case of Lane v. O'Toole, 8 N. D. 210, 78 N. W. Rep. 77. The instrument is set out in full in the opinion of the Court in that case, and need not, therefore, be reproduced here. The case cited is entirely analogous in its facts and in legal principle to the case at bar, and is distinctly in point. In that case this Court was called upon to construe the contract in question, and did so, holding that O'Toole was primarily the owner and entitled to the possession of all crops raised by him under the contract, and that O'Toole could not be divested of his possession of such crops except upon a showing of certain prerequisite conditions, which were not shown to exist in that case. In the absence of any such showing, the possession of the crop then in litigation was awarded to O'Toole. In this case a precisely similar state of facts is shown. In the case at bar, as in the case cited, there is not a scintilla of evidence tending to show that the conditions upon which the right to take possession of the crops could be exercised had taken place. There is neither allegation nor proof that O'Toole had defaulted in the performance of the contract on his part at any time prior to the sale of the storage ticket; nor is there a claim made that the plaintiff had, prior to the sale of the ticket, declared a forfeiture of the contract in evidence, or in any way sought to assert any right to the possession of the crop in question. Under these circumstances it is entirely clear that under the contract, as

already interpreted by this Court, and to which interpretation we adhere, the plaintiff was neither the owner nor entitled to the possession of either the wheat in question or the storage ticket which represented the same. Our conclusion is that the Court erred in refusing to direct a verdict for the defendant. The order refusing to grant a new trial is reversed, and a new trial granted. All the judges concurring.