(101 N. W. 893.)

---

ANDREW THURSTON V. OSBORNE-MCMILLAN ELEVATOR COMPANY.

Opinion filed December 3, 1904.

**Where a Wife Is the Vendee in an Executory Contract for the Purchase of Land, the Fact That Her Husband Works for Her Proves No Title in Him.**

1. Where husband and wife reside on land held by the wife under an executory contract for the purchase thereof, which requires the wife to farm the land, the fact that the husband devotes his time and labor to the cultivation of the land does not prove that he has any interest in the crop so that a mortgage given by him will create any lien thereon.

**Where the Vendor in Such Contract Reserves Title to Crops Until Division Thereof, Mortgage Attaches Only Upon Such Division.**

2. Where an executory contract for the sale of land reserved to the vendor the title to all crops grown on the land until certain conditions were performed by the vendee, and the vendor relinquished all his right to the crops in consideration of the cancellation of the contract, the full title to the crops vested in the vendee, and would become subject to the lien of a chattel mortgage previously executed by her.

**Where Surety Pays a Debt Secured by Chattel Mortgage He Becomes Vested With the Title to the Note and Mortgage — May Sue for Conversion of the Mortgaged Property.**

3. The plaintiff was a surety for the payment of a note which was secured by a chattel mortgage given by the principal debtor. He was obliged to pay the note at maturity. *Held,* that such payment vested the ownership of such note and mortgage in him, and he could maintain an action to recover the value of the mortgaged property, to the extent of his lien, from one who had converted it.

Appeal from District Court, Barnes county; *Glaspell,* J.

Action by Andrew Thurston against the Osborne-McMillan Elevator Company. Judgment for plaintiff. Defendant appeals.

Reversed.

*Lee Combs,* for appellant.

To recover upon a seed lien, the plaintiff must show that the grain alleged to have been converted was grown by the person to whom he sold the seed, and upon the land described in his alleged seed lien. Joslyn v. Smith, 2 N. D. 53, 49 N. W. 382; Martin v. Hawthorne, 3 N. D. 412, 57 N. W. 87.

To admit prejudicial evidence with the understanding that it is to be stricken out unless the party offering it produces evidence rendering it competent, is reversible error unless the promised testimony is introduced. Kneeland v. The Great Western Elevator Co., 9 N. D. 49, 81 N. W. 67; Insurance Co. v. Rubin, 97 Ill. 402; Howe Machine Co. v. Rosine, 87 Ill. 105; Erben v. Lorrillard, 19 N. Y. 302.

Where a tenant's contract stipulates that the title, ownership and possession is to remain in the landlord until a division thereof, mortgage by the tenant does not attach so as to warrant an action for a conversion by the mortgagee until such division. Savings Bank v. Canfield, 12 S. D. 330, 81 N. W. 630; Omlie v. Farmers State Bank, 8 N. D. 570, 80 N. W. 689. Tenant's interest does not attach until a division in such case. Angell v. Egger, 6

N. D. 391, 71 N. W. 547; Bidgood v. Monarch Elevator Co., 9 N. D. 627, 84 N. W. 561; Hawk v. Konouzki, 10 N. D. 37, 84 N. W. 563.

*Zuger & Paulson,* for respondents.

The delivery of the note by Myhre to Thurston upon paying of the amount due thereon operated to transfer said note and security to Thurston. Hill v. Alexander, 41 Pac. 1066; 4 Am. & Eng. Enc. Law (2d Ed.) 252; 27 Am. & Eng. Enc. Law (2d Ed.) 209; 23 L. R. A. 124, and note.

A. E. Olson acquired title to the crop by his settlement with Robert Anderson, and the mortgage given by him attached when he so acquired such interest. Section 4680, Rev. Codes 1899; Donovan v. St. Anthony & Dakota Elev. Co., 7 N. D. 313, 75 N. W. 809; Grand Forks Nat'l Bank v. Minneapolis & Northern Elev. Co., 43 N. W. 806; Merchants Nat'l Bank of Devils Lake v. Mann, 2 N. D. 546, 51 N. W. 946; Hostetter v. Brooks Elev. Co., 4 N. D. 357, 61 N. W. 49.

ENGERUD, J. Plaintiff seeks by this action to recover from the defendant elevator company damages for the alleged conversion of a quantity of wheat upon which the plaintiff claims a seed lien and four chattel mortgages. The answer of the defendant is a general denial, and also specifically denies that the plaintiff ever acquired any lien upon the grain in question, and further specifically denies that it converted the grain in question, or deprived the plaintiff thereof. The trial of the issues resulted in a verdict in favor of the plaintiff for the sum of $272.30. A motion for a new trial having been denied, the defendant appeals.

The appellant assigns numerous errors based upon the rulings of the court admitting and rejecting evidence. The defendant also moved for a directed verdict on the ground that the evidence was insufficient to sustain a verdict for the plaintiff. The latter motion is based largely upon the same propositions of law involved in the alleged erroneous admission and exclusion of evidence. For that reason the consideration of the assignments based on the denial of defendant's motion for a directed verdict will dispose of the questions arising on the several assignments with relation to the rulings on evidence.

Although the plaintiff, in his complaint, relies upon a seed lien and four several chattel mortgages, at the trial he offered proof

only as to the seed lien and two of the chattel mortgages. The trial court held that the evidence was insufficient to establish the seed lien, and instructed the jury to disregard all evidence in relation to that lien, and submitted to the jury only the evidence with relation to the two chattel mortgages. The facts developed on the trial in relation to these two chattel mortgages were as follows: One Almira Olson and her husband, A. E. Olson, during the year 1902, were occupying and residing upon two quarter sections of land in Barnes county, which land was owned in fee by one Robert Anderson. The latter had on December 18, 1901, contracted to sell the land to Almira Olson on what is commonly known as the "crop payment plan." The contract was in writing, and provided that the vendee, Almira Olson, should occupy the land and farm it, and deliver one-half of the crop each year to the vendor until the full purchase price, with interest, was paid. Title to the entire crop was reserved in the vendor until a division. The contract further provided that it was nonassignable without the written consent of the vendor. On May 19, 1902, Almira Olson and her husband, A. E. Olson, made and delivered to one E. K. Myhre a chattel mortgage to secure a note dated on that day, payable to said Myhre, for $133.28 and interest. The chattel mortgage covered all crops to be raised during the year 1902 on the land mentioned. This note was signed by the plaintiff as a surety, and when it matured the plaintiff was obliged to pay the balance due thereon, which then amounted to about $90, and the note was turned over to him by the payee. On November 15, 1901, the husband, A. E. Olson, alone, executed and delivered to the plaintiff a note for $417.07 and interest, and at the same time, to secure the same, executed a chattel mortgage upon certain personal property, including the crops to be grown during the year 1902 upon the land referred to. This note and mortgage were not signed by the wife, Almira Olson. Both mortgages were duly filed. A crop was raised by the Olsons upon the land in question during the year 1902, and in the latter part of October of that year they sold the grain to the defendant elevator company and absconded without paying the liens. Before the grain was sold, an arrangement was made between Anderson, the vendor of the land, and Mr. and Mrs. Olson, by which Anderson relinquished all right and title to the grain in consideration of the cancellation of the contract and the vacation of the premises by the Olsons. It does not appear, how-

ever, whether the grain was turned over to Mr. Olson or to Mrs. Olson. Nor is there any direct evidence tending to show that Mr. Olson had previously acquired any right to the crops on the land. The contract gave to Mrs. Olson alone the right to occupy and farm the land. Presumptively, therefore, she held whatever right to the crop was vested in the vendee by the contract; and, in the absence of any evidence to the contrary, we must presume that the relinquishment by Anderson of his claims under the contract left the entire title to the grain in Mrs. Olson. The fact that her husband lived with her on the farm, and devoted his time and labor to raising the crop, does not overcome the presumption of ownership by the wife. Olson v. O'Connor, 9 N. D. 504, 84 N. W. 359, 81 Am. St. Rep. 595. Under these circumstances, it was error to deny defendant's motion to withdraw from the consideration of the jury the note and mortgage executed by A. E. Olson alone, because there was no evidence to show that he ever had any title to the crop to which his mortgage could attach.

The appellant contends that, by reason of the terms of the contract between Robert Anderson and Mrs. Olson, there never was any title in Mrs. Olson to which her mortgage could attach; citing Omlie v. Bank, 8 N. D. 570, 80 N. W. 689, and similar cases. It is undisputed in this case that, before or at the time the first load of grain was hauled to the elevator, the vendor relinquished and surrendered all his rights in the grain to the vendee, thereby vesting the vendee with complete title. The mortgage, of course, attached as soon as the title vested.

Appellant further contended that plaintiff, because he signed the note ostensibly as maker, and subsequently paid it, without any express agreement at the time of payment or at any other time that the note and mortgage should be assigned to him, is not subrogated thereto. With respect to this contention, it is sufficient to say that the evidence clearly shows that the plaintiff was a mere surety on the note, and, under section 4661, Rev. Codes 1899, is entitled, upon payment thereof, to be subrogated to all the rights of the creditor. It is undisputed that he paid the sum of about $90 in cash for the balance due on the note, and is clearly entitled to all the securities which the principal makers had given to secure the payment to that extent.

We think the evidence was sufficient to warrant a recovery to the extent of the amount due on the chattel mortgage signed by

Mr. and Mrs. Olson, and hence the motion for a directed verdict was properly denied. As the error above indicated requires a new trial, it is unnecessary to discuss the numerous other assignments of error.

The judgment is reversed and a new trial ordered. All concur. (101 N. W. 892.)