## BULL v. NOVICE STATE BANK. (No. 6555.)

(Court of Civil Appeals of Texas. Austin. March 14, 1923. Rehearing Denied April 4, 1923.)

1. Banks and banking ⟐⟐140(3)—Receipt and payment of check by drawee bank held acceptance, although subsequently marked "Paid in error" or "Canceled in error."

Under Uniform Negotiable Instruments Act (Acts 36th Leg. [1919] c. 123), §§ 126, 136, 137, 185, 188, 189 (Vernon's Ann. Civ. St. Supp. 1922, arts. 6001—126, 6001—136, 6001—137, 6001—185, 6001—188, 6001—189) defining checks and bills of exchange, and prescribing the time within which they must be accepted, etc., where a check or bill of exchange, upon being presented to the drawee bank, and by it received, is charged to the account of drawer, marked "paid," and mailed to the drawer, who several days later returns it to the drawee bank and has it marked "Paid in error" or "Canceled in error," and repasses

it through the channels from when it came, the drawee bank will be held to have accepted such check or bill of exchange, and becomes primarily liable for its payment, and all indorsers are thereafter discharged from liability.

**2. Banks and banking ⚫126—Bank cannot charge depositor's account with check which clearly shows acceptance by drawee.**

A bank has no authority to charge the account of the depositor of a check which clearly shows upon its face that it had been accepted by drawee, which acceptance discharged depositor from his liability as indorser.

**3. Bills and notes ⚫70, 301—Drawee of check failing to refuse acceptance within 24 hours after presentment primarily liable for payment, and indorser discharged.**

A drawee of a check or bill of exchange has 24 hours after presentment to accept or refuse it, and if it fails or refuses to accept or return it within such time it will be presumed to have accepted said check or bill, and thereby becomes primarily liable for its payment, and the indorsers are discharged from further liability thereon.

Appeal from Coleman County Court; L. G. Mathews, Judge.

Suit by R. C. Bull against the Novice State Bank. From a judgment for a sum less than prayed for, plaintiff appeals. Affirmed in part, and reversed and rendered in part.

Snodgrass & Dibrell, of Coleman, for appellant.

Critz & Woodward, of Coleman, for appellee.

### Opinion.

BLAIR, J. Appellant's brief states the nature and result of this case, which we find to be substantially correct, as follows:

"This suit was brought in county court of Coleman county, Tex., May 26, 1921, by appellant. R. C. Bull, against appellee, Novice State Bank, of Novice, Tex., a state banking corporation, for the sum of $230, alleged to have been deposited by him in said bank, and never checked out, but which he had demanded and appellee refused to pay. Appellee answered by general and special exception, general denial, and special answer, claiming that appellant had checked out $20.72 more than he deposited.

"The case was heard before the court without a jury, and judgment rendered December 7, 1921, in favor of appellant for $56.20, to which judgment the appellant excepted on the ground that under the pleadings and evidence he was entitled to a larger recovery against appellee, and he gave notice of appeal to this court."

By this appeal appellant contends that the court erred in failing to render judgment in his behalf upon a certain check for the sum of $154.84, in addition to that rendered herein; which check he alleges was deposited to his credit in appellee bank, on November 18, 1920, drawn in his favor by F. C. Behrend,

through W. A. Hughen, on the First National Bank of Coleman, Texas, and by it paid in full on November 29, 1920. Appellee contends that the said check for $154.84 was received by it for collection only, and that it used due diligence in presenting same for acceptance through its correspondent bank, the Coleman National Bank of Coleman, Tex., to the drawee, the First National Bank of Coleman, Tex., and that the payment thereon was stopped or refused, and that upon its return appellee charged it against the account of appellant, upon his indorsement thereon. Upon this issue the trial court found in favor of appellee, and appellant appeals.

We adopt the following testimony as presented by the statement of facts concerning the transaction relative to the $154.84 check in controversy as our own.

H. D. Ayers testified as follows:

"My name is H. D. Ayers. I am cashier of the Novice State Bank, and was such cashier of the Novice State Bank during the year 1920. Mr. R. C. Bull had an account in our bank in 1920. That account of Mr. Bull's began before I went with the bank, and was there when I went there. Mr. F. C. Behrend had no account with the Novice State Bank. Beginning with the 1st of July, 1920, I will give you a list of the deposits of Mr. R. C. Bull with the Novice State Bank. * * *

"The check you show me is a check for $154.84, which was charged to the account of Mr. Bull. That shows on the statement November 7, 1920. That check was deposited to Mr. Bull's credit. That check was sent back from the First National to the Coleman National Bank to us. The payment on that check was stopped, with the notation that the payment was stopped or payment refused or something of that kind. I have that as November 7th; however, that must have been a mistake, as it must have been in December; that check was returned to us, and was the same check I had given Mr. Bull credit for in our bank. As a matter of fact that check had been paid by the First National, and was marked "paid" by them."

Plaintiff here offered in evidence the check identified by the witness, which is as follows:

"Coleman, Tex. 11–18—1920.

"First National Bank of Coleman.

"Pay to R. C. Bull $154.84, one hundred fifty-four 84/100 dollars. 47 turkeys, 553#. F. C. Behrend by W. A. Hughen. [Stamp.] The Novice State Bank, Novice, Texas, Paid."

On back of check:

"Payment stopped. R. C. Bull. Marked paid in error. Canceled in error. [Stamp.]

"Pay to the order of any bank, banker, or trust company, Nov. 27th, 1920. Prior indorsements guaranteed. Novice State Bank, Novice, Texas.

"The Coleman National Bank, Coleman, Tex-

⚫For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

as. Paid through clearing house November 29, 1920. No. 1.

"I believe that that check was deposited in our bank on November 29th, and I have a deposit slip covering that; that deposit slip shows that it was November 27 instead of 29. That check seems to have been marked 'Paid' by the First National Bank on November 20th. It does not say what bank it was, as it is just a stamp that said 'Paid' that is a perforation stamp. There was another check for $25.09 that was also credited to Mr. Bull's account; those checks were all drawn on the account of F. C. Behrend in the First National Bank, and each of them deposited by the payee at our bank. Those checks were all dishonored by the First National Bank, and payment refused. They were turned back to our account, and I charged them against the account of R. C. Bull. Mr. Bull did not tell me to charge them back to his account. I did not charge them to the account of the parties that I had given credit for. The check for $154.84 is the same check that I credited to the account of Mr. Bull on November 22d; that check was sent by me to the Coleman National Bank, and from the Coleman National Bank to the First National, and then returned to the Coleman National and returned to me, with the statement that payment had been refused. I never collected any of those checks."

F. C. Behrend testified as follows:

"My name is F. C. Behrend; I am acquainted with R. C. Bull. Mr. R. C. Bull had authority from Mr. Hughen to sign these checks; that is, it occurred this way: He kept on going right ahead buying chickens, and I let it go at that. I will say that the old gentleman came to me and asked me, if he could buy chickens for me, or, 'Will you stake me?' I said 'Yes; when I come back.' I went to visit my sister, and told him that I would be back in about 30 days, and then we would start business. He said that was plenty of time. He said, 'There are plenty of turkeys and chickens, and I want to do some business.' While I had agreed to stake him, I didn't want him to check on that bank, for my statement came to me on the 1st of October. I saw those checks by R. C. Bull, and in the meantime Mr. Bull had sent me plenty of chickens, and when he would send me the chickens I would send him a check that night. When these checks came in I stopped the checks. Mr. W. A. Hughen was working for me, and was left in charge of my business. He had full authority to represent me in my business, and to sign my name to checks. Mr. Hughen had the authority to sign his name to these checks for everything that he bought. Those checks by R. C. Bull were not his signature. The check for $154.84 which is before me is dated November 18th. I received that check back from the First National Bank on the 1st of December. The bank is responsible to me for that check. I don't know whether that check has been charged up to my account or not. I turned the check back to them after that. I have returned from the north on November 18, 1920."

W. A. Hughen testified as follows:

"During the fall of 1920, in September, October, and November, I was working for Mr. F. C. Behrend. During the month of August I was in charge of Mr. Behrend's business in Coleman. I had authority to sign Mr. Behrend's name to checks at that time. I signed the check which you show me for $154.84. I sent that check to Mr. R. C. Bull by letter. On my return home that night I found Mr. R. C. Bull at my house, and told him about sending him that letter and that check. That was for a bunch of turkeys."

R. H. Alexander testified as follows:

"My name is R. H. Alexander. I am cashier of the First National Bank, and have been for a number of years. The check which you exhibit to me for $154.84, dated November 18, 1920, has on the perforation stamp 'Paid 11—29—20.' I think that that is the Coleman National Bank stamp. That has also the notation on the back 'Canceled in error.' That is in the handwriting of Mr. Milton Collins, who is assistant cashier, all during the year 1920. It is not likely nor customary for us to pay a check and charge it to the account of the party drawing it whose name is signed to it, and pay it to the party presenting the check, and then afterwards cancel it; that stamp and notation, 'Canceled in error,' indicates that the payment was stopped. That indicates that we were instructed to stop payment, and caught it before it actually left the bank. It is customary where a bank receives a check from a correspondent bank that the bank that receives the check for collection stamps it 'Paid' with the clearing house stamp. The notation on the back of this check, 'Cancelled in error,' would not indicate that the check had ever been charged to the account of F. C. Behrend. Our books would have to be changed if it was. I have now examined my books with reference to this check, and find that on November 29th the check $154.84 was charged to the Behrend account, and on December 4th Mr. Behrend had credit for $154.84. The bank sends out statements to all of its customers on the 1st of each month, unless requested not to do so. That was done in the case of Mr. Behrend. We always send him his statements and his canceled checks.

"I know Mr. W. A. Hughen. At various times he had authority to sign the name of Mr. Behrend to checks, and then sometimes the authority would be withdrawn. It is usually the case that he had authority. I found that Mr. Behrend's account had been charged with this amount and also credited with the amount of $154.84, and I presume that that was this check that was credited back to him on December 4th; that check was paid as far as the Behrend account was concerned from November 29th until December 4th, but I won't undertake to say that this is the check that was credited back, but this is the amount that was credited to his account on December 4th, and is presumably that check. This check is marked 'Paid in error.' The books indicate as does the check, that the amount of the check was credited back to him after he had been charged with it."

Appellant submits three propositions complaining of the action of the trial court in its refusal to render judgment for him upon the check for $154.84, under the state of facts as presented in this case. Each of

these propositions relates to really one question, and raises it in different manners and from different angles; hence we will discuss it under the one question raised, that is: Did the First National Bank of Coleman, drawee of said check or bill of exchange for $154.84, accept the same upon its being presented for payment? We are of the opinion that it did.

This case is governed by the Uniform Negotiable Instruments Law, and we will set forth that portion applicable to this case.

By section 185 of the Uniform Negotiable Instruments Law (Acts 36th Leg. [1919] c. 123 [Vernon's Ann. Civ. St. Supp. 1922, art. 6001 —185]) a check is defined as follows:

"A check is a bill of exchange drawn on a bank payable on demand. Except as herein otherwise provided, the provisions of this act applicable to a bill of exchange payable on demand apply to a check."

Section 188 (article 6001—188) provides:

"Where the holder of a check procures it to be accepted or certified the drawer and all indorsers are discharged from liability thereon."

Section 189 (article 6001—189):

"A check of itself does not operate as an assignment of any part of the funds to the credit of the drawer with the bank, and the bank is not liable to the holder, unless and until it accepts or certifies the check."

By section 126 of this same act (article 6001—126) a bill of exchange is defined as follows:

"A bill of exchange is an unconditional order in writing addressed by one person to another, signed by the person giving it, requiring the person to whom it is addressed to pay on demand or at a fixed or determinable future time a sum certain in money to order or to bearer."

By section 136 (article 6001—136) it is provided:

"The drawee is allowed twenty-four hours after presentment, in which to decide whether or not he will accept the bill; but the acceptance if given, dates as of the day of presentation."

Section 137 (article 6001—137) provides:

"Where a drawee to whom a bill is delivered for acceptance destroys the same, or refuses within twenty-four hours after such delivery, or within such other period as the holder may allow, to return the bill accepted or nonaccepted to the holder, he will be deemed to have accepted the same."

[1] Basing our opinion upon the above propositions of law announced in the Uniform Negotiable Instrument Act of 1919, we are of the opinion that a check or bill of exchange, upon being presented to the drawee bank, and by it received, charged to the account of the drawer, marked "Paid," and mailed to the drawer, who several days later returns the same to said drawee bank, and procures the same to be marked "Paid in error" or "Canceled in error," and repasses the same through the channel from whence it came, that said drawee bank will be held to have accepted said check or bill of exchange, thereby becoming primarily liable for its payment, and that all indorsers are thereafter discharged from liability.

[2] The evidence shows that appellee bank charged the account of appellant with the amount of this check for $154.84, upon its being received back with the above-mentioned notations thereon, upon his indorsement of the said check at the time of its deposit. Appellee had no authority to so charge the account of appellant with this check, upon its return, as it clearly showed on its face to have been accepted by the drawee, and upon such acceptance appellant was discharged from liability on his indorsement.

[3] We are also of the opinion that the First National Bank of Coleman, drawee of said check or bill, is presumed to have accepted said bill of exchange under the provisions of sections 136 and 137 of the Negotiable Instruments Act above quoted. A drawee of a check or bill of exchange has 24 hours after presentment to accept or refuse the same, and, if it fails or refuses to accept or return same within such time, it will be presumed to have accepted said check or bill, and thereby becomes primarily liable for its payment, and the indorsers are discharged from further liability thereon. So in this case, aside from the fact that the evidence clearly shows that the drawee, First National Bank of Coleman, accepted said check or bill when it was presented, and thereby became primarily liable for its payment, it is further liable under said sections 136 and 137, above quoted, by reason of having retained possession of the check for more than 24 hours after it was presented and received by it. The testimony shows that the check was presented to the First National Bank of Coleman, the drawee, on the 29th of November, 1920, and that it was in its possession, or in the possession of the drawer, to whom said drawee delivered it, until December 4, 1920, when it was returned through the bank presenting same, with the notations above indicated, and by such retention for more than 24 hours it is presumed to have accepted the check and thereby became primarily liable for its payment.

We do not hold that this presumption might not be overcome, but the record does not disclose any effort on the part of drawee bank to overcome such presumption; but it is disclosed that it accepted the check, charged it to the account of the drawer, mailed it to the drawer after having marked the same "Paid," and at least seven days thereafter the drawer testifies that he returned the

check to the drawee bank, and requested that it be returned, payment being refused, which clearly establishes the fact that appellant had accepted said check, and became primarily liable for its payment.

We are therefore of the opinion that the trial court erred in failing to render judgment for appellant for the additional sum of $154.84, the amount of the check in controversy; there being no complaint against the judgment rendered by the court for appellant. It is therefore ordered that the judgment rendered be affirmed for the amount found by the trial court for appellant, and that the judgment of the court refusing appellant a recovery on the check for $154.84 be, and the same is hereby, reversed and rendered; and it is ordered that appellant do have and recover of and from appellee said sum of $154.-84, in addition to the judgment rendered, and for costs of suit.

Affirmed in part and in part reversed and rendered.

---

⊙⊃For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes