R. S. CLARK, Appellant, v. NORTHERN PACIFIC RAILWAY COMPANY, a Corporation, Respondent.

(214 N. W. 33.)

**Bills and notes — acceptance, how brought about — refusal of drawee.**

    1. Under the provisions of the Negotiable Instruments Act acceptance of a bill of exchange may be accomplished: (1) by writing signed by the drawee (Comp. Laws 1913, § 7017; Neg. Inst. Law, § 132); (2) by destruction of the bill by the drawee, or (3) by his refusal within twenty-four hours after delivery, or within such other period as the holder may allow to return the bill to the holder (Comp. Laws 1913, § 7022; Neg. Inst. Law, § 137).

**Bills and notes — failure to return — constructive acceptance.**

    2. In the instant case, it is *held*, for reasons stated in the opinion, that there was a constructive acceptance of a sight draft by the defendant, under § 7022 Comp. Laws 1913.

**Subrogation — guarantor of sight draft — may sue drawee, when.**

    3. When a party guarantees payment of a sight draft for the accommoda-

---

Annotation.—(1). As to what acts constitutes acceptance of bill or note within meaning of Negotiable Instrument Law, see 3 R. C. L. 1302; 1 R. C. L. Supp. 1025.

(2) On the general rule that detention of bill of exchange or check by drawee as acceptance thereof, see annotation in 17 L.R.A.(N.S.) 1266; 3 R. C. L. 1308.

(3) On right of accommodation party who is obliged to pay bill or note, to recover from the accommodated party, see annotation in 37 L.R.A.(N.S.) 783; 12 R. C. L. 1099; 2 R. C. L. Supp. 1550.

_tion of another, and on default of the drawee, pays the same, such party becomes vested with the ownership of the draft and may obtain an action thereon against the drawee.

Opinion filed June 4, 1927.

Bills and Notes, 8 C. J. § 477 p. 303 n. 89; § 487 p. 318 n. 8.   Subrogation, 37 Cyc. p. 402 n. 42.

From a judgment of the District Court of Burleigh County, *Jansonius,* J., plaintiff appeals.

Reversed.

*F. E. McCurdy,* for appellant.

*Conmy, Young & Burnett,* for respondent.

The payee of a draft unaccepted cannot maintain an action upon it against the party on which it was drawn.   Sims v. American Nat. Bank (Ark.) 135 S. W. 356; Lawson v. Layton (Del.) 86 Atl. 105.

The drawee of a bank check cannot be held liable on a claimed contract of acceptance external to the bill unless the language used, clearly and unequivocally imparts an absolute promise to pay.   First Nat. Bank v. Commercial Sav. Bank (Kan.) 8 L.R.A.(N.S.) 1148, 87 Pac. 746.

"The element of substitution in subrogation is that the substitute is put in place of another and can exercise no right not possessed by his predecessor, and can only exercise such right under the same conditions and limitations as were binding upon his predecessor."   Poe v. Philadelphia Casualty Co. (Md.) 84 Atl. 476.

"A stranger who voluntarily and without request pays a debt of another cannot sustain an action at law against the latter if the debtor has in no way ratified such payment."   Crumlish v. Central Improv. Co. (W. Va.) 45 Am. St. Rep. 872.

"Where a court of bankruptcy has taken possession the property is thereby withdrawn from all state courts."   Loeb v. Fisher (La.) 68 So. 383.

CHRISTIANSON, J.   On or about March 15, 1922, the plaintiff, R. S. Clark, was appointed receiver of the High Carbon Lignite Mines, Inc., a North Dakota corporation.   The appointment was made by

an order of the district court of Dunn county in this state. Clark forthwith qualified as receiver and took charge of and operated the coal mines of the said High Carbon Lignite Mines, Inc., situated near Werner in Dunn county, and continued to operate such mines until December 29, 1922. During this period Clark, as receiver, sold considerable quantities of coal to the defendant railway company. At the time Clark was appointed receiver the High Carbon Lignite Mines, Inc., was indebted to the railway company in a considerable sum for the construction of a spur track to the mine. The plaintiff, Clark, claims that he, as receiver, had a conversation with the officials of the defendant railway company regarding this claim and that a certain understanding was reached between them as regards the future sales of coal by him as receiver to the company and that the terms of the agreement so reached were embodied in a letter that he wrote to the assistant to the president of the defendant. The letter is dated at St. Paul, Minnesota, December 1, 1922, and reads in part as follows:

"I am willing that the railway company retain out of the amount of the present bill, three hundred dollars ($300) to apply on the indebtedness for the spur track, and I agree to allow the railway company to take out of the purchase price of the balance of coal to be shipped under contract calling for eight hundred (800) tons, the additional sum of two hundred dollars ($200) to apply on the spur track indebtedness."

(The letter is attached to a stipulation of facts in the case and there referred to as "an agreement in the form of a letter.")

On December 20, 1922, Clark, as receiver, wrote the defendant railway company as follows:

"We beg to advise you that we have assigned your account with us to the Merchants State Bank of this city. You will receive a draft from them either directly to yourselves or through one of the banks of your city. . . ."

On December 23, 1922, the plaintiff Clark, as receiver, drew a sight draft on the Northern Pacific Railway Company, payable to the Merchants State Bank of Werner for the sum of $920.21. Clark delivered this draft to the Merchants State Bank of Werner and received credit therefor in his account as such receiver and drew checks thereon and the same was disbursed in the course of the receivership.

At the time of the deposit of such draft, and in order to obtain immediate credit therefor, Clark personally guaranteed the payment of the draft and agreed with the Merchants State Bank of Werner that in case the draft was not paid on presentation that he, the said R. S. Clark, individually would pay the amount of the draft to the Bank.

Upon the trial it was stipulated as a fact that on the day the draft was drawn there was unpaid, on the open account of the Northern Pacific Railway Company for coal furnished to it, more than the sum of $920.21; that the defendant railway company claimed a right of offset against this account, but that such right of offset was denied by Clark as receiver and as an individual. It was further stipulated as a fact that "the plaintiff delivered said bill of exchange or draft to the Merchants State Bank of Werner and received credit therefor as receiver." The said Merchants State Bank of Werner forwarded the draft direct to the drawee, the Northern Pacific Railway Company at St. Paul, Minnesota, for remittance and payment. The draft was received by the railway company, and on January 3, 1923, the treasurer of the defendant railway company wrote the Merchants State Bank of Werner as follows:

"I am in receipt of your letter of Dec. 23rd, inclosing sight draft of R. S. Clark, Receiver of the High Carbon Lignite Mines, Inc., for $920.21.

I am unable to see how the figures on the draft are arrived at. Will you please send me a detailed statement of the account showing this figure and upon receipt of same, I will take up with our Accounting Department to learn what I can regarding it."

On January 8, 1923, he wrote the Merchants State Bank of Werner further as follows:

"Referring to may letter to you of the 3rd regarding the High Carbon Lignite Mines, Inc. account:

I have just been advised by our Purchasing Department to withhold all vouchers in their favor owing to the bills we have against that company and until such time as the Federal court shall render a decision as to the handling of the affairs of this company."

On January 22, 1923, the treasurer of the defendant railway company wrote the Merchants State Bank of Werner as follows:

"Referring to your letter of January 10th regarding the account of

the High Carbon Lignite Mines Co. Up to the present time I have not received any voucher from which payment could be made you by the High Carbon Lignite Mines Company and have just recently received letters from our purchasing agent in which he states that the payment of any invoices should be withheld.

I would therefore suggest that you take the matter up with Mr. R. J. Elliott, Purchasing Agent, for any further information.

. You may possibly be aware of the fact that this company owes the Northern Pacific on account of bills account contract amounting to $2,407.17 on which I believe that there has been a payment of some $300 made."

The record further shows that a petition in involuntary bankruptcy was filed against the High Carbon Lignite Mines, Inc., on November 24, 1922; that on December 16, 1922, it was adjudicated a bankrupt by the United States district court for the district of North Dakota; that one Cahill was appointed trustee in bankruptcy and qualified as such; that on the 23d day of February, 1923, the defendant railway company filed its claim in such bankruptcy proceeding against the High Carbon Lignite Mines, Inc., in the sum of $2,241.16; that the bankruptcy proceeding was closed and the trustee discharged on November, 20, 1923.

After the Merchants State Bank of Werner had been notified by the railway company that the draft would not be paid, the bank in turn notified the plaintiff; and it is stipulated as a fact that on or about May 5, 1923, the plaintiff, R. S. Clark, personally paid to the Merchants State Bank of Werner the amount of the draft. Thereafter plaintiff instituted this action against the railway company.

In his complaint the plaintiff alleged his appointment as receiver of the High Carbon Lignite Mines, Inc., his sale of coal to the defendant, as such receiver; the drawing of the draft, the forwarding thereof to the defendant; the plaintiff's personal guarantee that the draft would be paid, the defendant's retention of the draft and its failure to pay the same and the payment by the plaintiff personally of the amount of the draft to the Merchants State Bank of Werner. In its answer the defendant denied that it was indebted to the plaintiff or to the Merchants State Bank of Werner, and alleged that it was under no obligation to pay the drafts. The answer alleged that, if the plaintiff

paid the amount of the draft to the Merchants State Bank of Werner, he did so as a volunteer. The answer further alleged that prior to the time the draft was drawn the High Carbon Lignite Mines, Inc., had been adjudged a bankrupt and that the bankruptcy court had superseded the district court of Dunn County in the administration of the affairs of said corporation. The answer further alleged as a set-off that the High Carbon Lignite Mines, Inc., was indebted to the defendant in the sum of $2,241.16 on account of the construction and installation of a side track to serve the mines of the said High Carbon Lignite Mines, Inc., at Werner, North Dakota, and that on or about November, 1922, the defendant agreed with the plaintiff to buy coal from the High Carbon Lignite Mines, Inc., the purchase price of such coal to be applied on the said indebtedness of the said High Carbon Lignite Mines, Inc., to the defendant.

To this answer the plaintiff interposed a reply, wherein it was alleged that any indebtedness owing to the defendant by the High Carbon Lignite Mines, Inc., was incurred long prior to the receivership and could only be paid in the course of liquidation. The reply specifically denied the existence of the agreement (alleged in the answer) that the purchase price of the coal should be applied on the prior indebtedness of the High Carbon Lignite Mines Inc., to the defendant railway company, and alleged that there was an agreement as outlined in the letter written by Clark to the assistant to the president of the railway company, hereinabove set forth. The case was tried upon the issues thus framed and resulted in a judgment in favor of the defendant for a dismissal of the action, and the plaintiff has appealed.

The appellant contends that the coal was sold to the railway company under the special agreement outlined in the letter dated December 21, 1922; that under such agreement the railway company had no right to credit the purchase price of the coal upon the account owing to it by the High Carbon Lignite Mines, Inc.; that the defendant railway company was indebted to the receiver, for the coal sold and delivered in a sum exceeding the amount of the draft, and that upon the payment by R. S. Clark to the Merchants State Bank of Werner of the amount of the draft, in accordance with his personal guaranty, all the rights and interests of said Clark, as receiver, in and

to the indebtedness for which the draft was drawn and of the Merchants State Bank of Werner, as the payee in and owner of the draft, were transferred to and became vested in the said R. S. Clark, individually.

The respondent, on the other hand, contends (1) that the draft or bill of exchange drawn by Clark, as receiver, upon the Northern Pacific Railway Company was not accepted by such company and that, consequently, no liability exists or can be predicated on such draft; (2) that in any event the plaintiff is not subrogated to the rights of the bank, because in making payment of the draft to the bank he acted as a mere volunteer; (3) that the defendant railway company claimed and had a right of set-off against the claims of the High Carbon Lignite Mines, Inc., and that such right was recognized by the bankruptcy court; and (4) that at the time of the attempted assignment by Clark, as receiver, to the Merchants State Bank of Werner, the bankruptcy court had exclusive jurisdiction of the properties of the High Carbon Lignite Mines, Inc.

We shall not attempt to consider the various contentions separately. In our opinion, the undisputed facts bring the case within certain well-settled and controlling principles.

It is undisputed that Clark was the duly appointed receiver of the High Carbon Lignite Mines, Inc., and was operating the coal mines as such receiver. It is further undisputed that the Railway Company purchased large quantities of coal from Clark as receiver and that it paid him to exceed One Thousand Dollars upon account for the coal so received; and that there remained unpaid from the defendant, for the coal delivered to it by Clark, as receiver, an amount in excess of $920.21. It is further undisputed that the claim which the defendant seeks to offset is one against the High Carbon Lignite Mines, Inc., and not one against Clark as receiver. The claim was owing at and before the time Clark was appointed receiver.

It is, we think, too clear for controversy that the defendant was not, and is not, entitled to set off this claim against the debt it owed to the receiver for the coal. "Debts due to the receiver, as distinguished from debts due the company, cannot be set off as against a debt due from the company." 8 Fletcher, Cyc. Corp. § 5297, p. 8916; 2 Tardy's Smith Receivers, 2d ed. pp. 1666–1672. See also Gilbert-

son v. Northern Trust Co. 53 N. D. 502, 42 A.L.R. 1353, 207 N. W. 42.

Clark was operating the mine as a receiver. As such he shipped coal to the railway company which it accepted and retained. It is admitted that at the time the draft was drawn there was due, as/and for the purchase price for such coal, an amount in excess of the draft. The bank accepted the draft and advanced the full face amount thereof to the receiver, and the funds so received were duly disbursed in the course of the receivership. In order to obtain the funds from the bank on the draft, the receiver individually guaranteed that the draft would be paid on presentation, and that if it was not so paid he would pay the amount thereof to the bank.

The respondent invokes § 7017, Comp. Laws 1913 (Neg. Inst. Law, § 132), which provides that the acceptance of a bill "must be in writing and signed by the drawee;" and contends that in view of this section no liability can be predicated on the bill of exchange in suit. Respondent has apparently overlooked § 7022, Comp. Laws 1913 (Neg. Inst. Law, § 137). This section reads: "Where a drawee to whom a bill is delivered for acceptance destroys the same, or refuses within twenty-four hours after such delivery, or within such other period as the holder may allow, to return the bill accepted or nonaccepted to the holder, he will be deemed to have accepted the same."

There is no inconsistency between §§ 7017 and 7022 supra. They merely prescribe different modes in which an acceptance may be effected. Acceptance under either section is sufficient. Constructive acceptance by destruction or non-return under § 7022 is just as binding as express acceptance in writing under § 7017.

It is admitted that the draft in suit was forwarded to the drawee on or about December 23, 1922, and presumptively it was received in due course of time. The draft was not returned nor was payment refused. In the letter dated January 3, 1923, the treasurer of the defendant company admitted receipt of the draft and said nothing about refusing to pay it. He merely asked for certain information, apparently to the end that he might ascertain whether the amount of the draft was owing. The letter is rather an indication that the draft will be paid, if the amount is found correct, than that payment

will be refused. If it was the intention of the defendant to refuse payment altogether, the letter of January 3, 1923, was an idle act. It is stipulated as a fact that there was actually due, for coal shipped, an amount in excess of the draft. In the circumstances established in this case there was, we think, clearly an acceptance of the draft by the defendant within the purview of § 7022 supra. Wisner v. First Nat. Bank, 220 Pa. 21, 17 L.R.A.(N.S.) 1266, 68 Atl. 955; Miller v. Farmers State Bank, 165 Minn. 339, 206 N. W. 930; Bull v. Novice State Bank, — Tex. Civ. App. —, 250 S. W. 232.

The plaintiff, having reimbursed the payee in the draft in accordance with his agreement, is clearly entitled to maintain an action against the drawee. Babcock v. Blanchard, 86 Ill. 165. See also Thurston v. Osborne-McMillan Elevator Co. 13 N. D. 508, 101 N. W. 892; 3 R. C. L. p. 1335.

In view of the conclusion reached as regards liability on the draft, the contentions predicated upon the bankruptcy proceeding become immaterial. We are inclined to the view, however, that in any event these contentions are without merit. Clark had been appointed receiver by a court of competent jurisdiction more than eight months before the petition in bankruptcy was filed. He operated the mines as such receiver. The claim in suit arose in course of such operation. It is not a claim in favor of the High Carbon Lignite Mines, Inc., and against the Northern Pacific Railway Company; it is a claim in favor of Clark as receiver for coal which he sold and delivered to the defendant railway company. The claim was the property of the receiver, who by means of the draft obtained moneys equivalent to the face of the draft, which moneys it is admitted were properly disbursed in the receivership proceedings.

In Gilbert's Collier on Bankruptcy (p. 521), it is said: "A state court which appoints a receiver has jurisdiction on the receiver's accounting, over the amount of his compensation, the fees of his counsel and the payment of the surety upon his bond. Where, prior to the filing of a petition in bankrupty, the debtor's property is in the possession of a state court in insolvency or winding up proceedings, it should not be taken from the receiver of the state court by a summary order or process of the bankruptcy court, but in obedience to

the rule of comity, application should be made to the state court for an order for its surrender."

There is no contention in this case that there remained any surplus in the hands of Clark as receiver belonging to the High Carbon Lignite Mines, Inc. On the other hand, it is specifically admitted that the moneys which Clark received from the Merchants State Bank of Werner upon the draft in suit were disbursed by him as receiver.

The judgment appealed from is reversed and the cause remanded with directions to enter judgment in favor of the plaintiff for the amount demanded in the complaint.

BIRDZELL, Ch. J., and BURKE, BURR, and NUESSLE, JJ., concur.