(113 So. 147)

No. 28422.

### FIRST NAT. BANK OF WINNFIELD v. CITIZENS' BANK OF CAMPTI.

### In re FIRST NAT. BANK OF WINNFIELD.

April 25, 1927. Rehearing Denied May 23, 1927.

*(Syllabus by Editorial Staff.)*

1. **Bills and notes** ⬳443(2) — **Bank, paying draft, had actual interest, entitling it to sue for payment of drawee's sight draft on defendant bank (Code Prac. art. 15).**

   Bank, paying draft at request of drawee, which gave bank a sight draft on another bank for same amount and a note, indorsed with understanding that indorsers would be liable as such only if bank failed to recover on sight draft, had actual interest entitling it to sue drawee bank for payment of such draft, under Code Prac. art. 15; original draft not being fully paid by delivery of note.

2. **Bills and notes** ⬳70—**Drawee bank, not returning draft within statutory time, is liable to holding bank, though drawer had no deposit or authority to draw (Negotiable Instruments Law, § 137).**

   Drawee bank, failing or neglecting to return sight draft, accepted or nonaccepted, to holding bank within 24 hours after delivery, as required by Negotiable Instruments Law (Act No. 64 of 1904) § 137, is liable to holder, though drawer had no funds in, nor authority to draw on, drawee bank.

Certiorari to Court of Appeal, Second Circuit.

Action by the First National Bank of Winnfield against the Citizens' Bank of Campti. A judgment for defendant was affirmed by the Court of Appeal, and plaintiff applies for certiorari or writ of review. Reversed and rendered.

C. H. Lyons, of Shreveport, for applicant.

Phanor Breazeale, of Natchitoches, for respondent.

LAND, J.  A manufacturing company, whose name does not appear in the record, drew a draft for $650 on the Perfection Curing Company for a car of tile shipped to Campti, La., and which was to be used in the construction of a plant for the Campti Sweet Potato Company.

This draft, with bill of lading attached, was forwarded by the drawer to the First National Bank of Winnfield for collection. At the request of an agent of the Perfection Curing Company, the First National Bank of Winnfield paid the draft, released to said company the bill of lading, and accepted a sight draft for $650, dated September 25, 1920, and drawn by the Perfection Curing Company on the Citizens' Bank of Campti.

Plaintiff bank, through its correspondent, the American National Bank of Shreveport, forwarded the sight draft of the Perfection Curing Company to the Citizens' Bank of Campti for acceptance and payment.

The draft was received by the Bank of Campti on September 28, 1920, was held by that bank until October 11, 1920, without being accepted or rejected, and was then returned to the First National Bank of Winnfield.

Defendant bank gave no notice of dishonor, and plaintiff bank, the holder, has been unable to collect the amount of the draft from the Perfection Curing Company, the drawer.

The present suit has been brought to enforce payment of the draft in question.

It is the contention of plaintiff bank that, under section 137 of the Negotiable Instruments Law (Act No. 64 of 1904), defendant bank became liable to it as acceptor of the draft by its refusal, within 24 hours after the receipt of the draft, to return same to plaintiff bank, the holder, accepted or nonaccepted.

The answer of defendant bank is a general denial, coupled with the special defense that it carried no account for the Perfection Curing Company, was under no obligation to it in any way, and that the officials of said company had no authority to bind respondent for the debts or drafts of said company.

Plaintiff's demand was rejected in the low-

er court, and this judgment was affirmed by the Court of Appeal for the Second Circuit.

The decision of the Court of Appeal is now before us for review.

[1] The sole ground of the decision of the Court of Appeal is stated in the following language:

"This evidence shows that, in so far as the plaintiff is concerned, the draft of the Perfection Curing Company on the Citizens' Bank of Campti has been fully paid by the delivery to plaintiff of the promissory note of the Perfection Curing Company, which note is perfectly good, and that the matters sought to be adjudicated in this suit are the respective rights of the Perfection Curing Company and the Citizens' Bank of Campti. The First National Bank of Winnfield is without standing in court to champion the rights of the Perfection Curing Company under article 15 of the Code of Practice, which reads: 'An action can only be brought by one having a real and actual interest, which he pursues, but as soon as that interest arises he may bring his action.' "

We cannot concur in the view expressed by our learned brothers of the Court of Appeal that the National Bank of Winnfield is without a real and actual interest in the present suit.

The evidence clearly shows that plaintiff bank paid out $650 of its own money in taking up the draft and bill of lading of the manufacturing company, drawn on the Perfection Curing Company, which in turn gave to plaintiff bank the sight draft sued upon and drawn by said company on the Citizens' Bank of Campti.

The First National Bank of Winnfield is not championing, by any means, the rights of the Perfection Curing Company in the present suit, but is attempting to assert its own rights as the holder of a draft against the Citizens' Bank of Campti, and, in event of loss of suit, to hold the indorsers on the note of the Perfection Curing Company liable.

A careful reading of the testimony of the president of plaintiff bank shows clearly that this note was not to be due, and not to be paid, unless and until the bank brought suit against the Citizens' Bank of Campti, and same resulted in a final judgment, and only in event of loss of the suit. Evidence, 11, 13–17.

C. H. Lyons and J. J. Peters indorsed the note with the understanding that the proceeds of the draft would take care of the note, and that they would be liable as indorsers only in the event of failure of plaintiff bank to recover on draft drawn on the Citizens' Bank of Campti. See evidence above.

It cannot be correctly held, therefore, that the draft of the Perfection Curing Company has been fully paid by the delivery to plaintiff bank of the note of the Perfection Curing Company, as without a final adverse judgment in the present suit there can be no liability on the part of the indorsers on the note to the First National Bank of Winnfield, and it has not been possible for plaintiff bank to collect the amount of the draft from the Perfection Curing Company, the drawer.

The actual interest of plaintiff bank in the present suit is therefore apparent.

Section 185 of Act 64 of 1904, the Negotiable Instruments Law, declares that:

"A check is a bill of exchange drawn on a bank, payable on demand, except as herein otherwise provided, the provisions of this act applicable to a bill of exchange payable on demand apply to a check."

It is declared in section 136 of the act that:

"The drawee is allowed twenty-four hours after presentment in which to decide whether or not he will accept the bill; but the acceptance, if given, dates as of the day of presentation."

It is provided in section 137 of the act that:

"Where a drawee to whom a bill is delivered for acceptance destroys the same, or refuses within twenty-four hours after such delivery, or within such other period as the holder may allow, to return the bill accepted or nonaccepted to the holder, he will be deemed to have accepted the same."

It is admitted by defendant bank that the sight draft arrived at the Citizens' Bank of

Campti on September 28, 1920, and was held at the latter bank until October 11, 1920, without being accepted or rejected. Transcript, 4.

The president of plaintiff bank testified that he called the president of defendant bank over the telephone, before he accepted the draft of the Perfection Curing Company, and that the president of defendant bank agreed to honor it.

The president of defendant bank denied on the witness stand that he promised to pay the draft in conversation over the telephone. The president of defendant bank admits, however, that he held the draft for some days, hoping that he could collect the money from the Campti Sweet Potato Company, which was under obligation to the Perfection Curing Company, the drawer of the draft.

The president of defendant bank was also president of the Campti Sweet Potato Company, and testified:

"I hoped to collect some money as president of the Campti Sweet Potato Company for unpaid stock, and then take care of the draft."

But the witness stated that he could not swear that he made any such statement over the telephone to Mr. Bryan, the president of plaintiff bank, and admitted on the witness stand:

"No; I don't know that Mr. Bryan understood the draft should be held. * * * " Evidence, 21, 24.

The president of plaintiff bank testified that all the time the draft was out he thought it had been paid. Evidence, 4 and 5.

It is clear, therefore, that the president of defendant bank, on his own initiative, and without the knowledge or consent of the president of plaintiff bank, held the draft and attempted to collect it from the stockholders of the Campti Sweet Potato Company.

It is plain, from the allegations of plaintiff's petition, that the First National Bank of Winnfield seeks to recover in this suit,

not upon any express promise of the Citizens' Bank of Campti to honor the draft, which is not averred in the petition, but upon the allegations in the petition specifically averring the retention of this draft for more than 14 days, and the refusal by defendant bank to return same to plaintiff bank, the holder within 24 hours, accepted or nonaccepted. Petition, art. 9.

[2] The rights of the respective parties depend necessarily upon a proper construction of section 137 of the Negotiable Instruments Law, Act 64 of 1904.

We have been cited to no decision of this court, and we know of none, construing the particular section in question.

The cases in other jurisdictions are not in accord as to the correct interpretation to be placed upon section 137 of Act 64 of 1904, the Negotiable Instruments Law of our state.

In some states it is held that the clause in said section, "*or refuses* within twenty-four hours after such delivery * * * to return the bill accepted or nonaccepted to the holder," requires, as a condition precedent to an acceptance under this section, that the holder must not only present the bill or check for acceptance, but that he must make a demand for its acceptance and await a specific refusal before the drawee is deemed an acceptor.

In declining to follow the cases supporting this construction of the section, the court in Wisner v. First National Bank, 220 Pa. 21, 68 A. 955, 17 L. R. A. (N. S.) 1266, said:

" * * * It is immaterial to the drawer when the bill is returned, as he is protected by notice of dishonor, and hence this section of the act, *requiring prompt action in returning the bill*, was obviously enacted for the benefit of the holder of the bill. * * * The manifest purpose in requiring the prompt return of the bill is in the interest of and for the protection of the holder. * * * The act declares in section 136 [P. L. 1901, p. 194; Pa. St. 1920, § 16128; section 137 of our act] that 24 hours is sufficient time for the drawee to decide whether or not he will accept the bill, and, the section under consideration having allowed this time, it requires

him to return the bill accepted or nonaccepted. If a demand and refusal are conditions precedent to an acceptance under this section, then the holder must not only present the bill for acceptance, but he must make a demand for its acceptance and await a specific refusal before the drawee is deemed an acceptor. This would certainly not be to the convenience or the interest of the holder, but in direct opposition to both. It would afford the holder less protection and would in effect prevent the return of the bill within 24 hours; or it would require the holder, in transmitting the bill with instructions to present it for acceptance, to send at the same time a demand for its acceptance.

"It is obvious that such demand, accompanying a presentation of a bill for acceptance, is wholly unnecessary, and certainly was not in contemplation of the Legislature in enacting the section. The presentation of a bill for acceptance is a demand for its acceptance which, if the bill is retained by the drawee, implies a demand for its return if acceptance is declined, in contemplation of the Negotiable Instruments Law. The purpose of presenting a bill of exchange to the drawee is to require him to accept and assume liability for its payment, or to refuse its acceptance and thereby avoid liability. When the bill is presented, action by the drawee is therefore demanded of him, and he cannot remain silent and inactive without incurring the statutory penalty prescribed for such conduct. If he is permitted to retain the bill, he must return it accepted or nonaccepted at the expiration of 24 hours. If he accepts, he is required to do so in writing and must return the bill. If he refuses, he must return the bill nonaccepted. If he fails to do either—return it accepted or nonaccepted—he is 'deemed to have accepted the bill' under this section of the act, and is liable thereon to the holder.

"It is apparent, we think, that in the enactment of this section of the statute the Legislature regarded the presentation for acceptance as a demand for an acceptance, which, when the bill is retained by the drawee, implies a demand for its return within the time specified, and that therefore the neglect or failure to return is a refusal to return the bill. As said by this court in First National Bank of Northumberland v. McMichael [106 Pa. 460, 51 Am. Rep. 529] supra, if a bank does not pay * * * a check, it is bound to refuse it. And this is more clearly disclosed as the true interpretation of the word 'refuses' in this connection, when we consider that the consequences to the holder of the nonreturn of the bill [are] the same, whether it follows a demand, additional to the presentation for acceptance and a re-

fusal, or simply a neglect or failure to return after the demand implied by its presentation for acceptance. If the section has in view the protection of the holder, as it manifestly has, then it was evidently the intention of the Legislature that the nonreturn of the bill within the specified time, regardless of the clause, will make the drawee an acceptor."

The Supreme Court of Oklahoma in construing section 7807, C. S. 1921, which is identical with section 137 of our Negotiable Instruments Law, said in part:

"The defendant American National Bank contends that the consensus of authority is to the effect that, under the common law and under statutes identical with or similar to those above quoted, the mere failure of a party to whom a draft is presented for acceptance and payment to return same within 24 hours, or such other time as may be allowed for acceptance and payment, with notice of nonacceptance, will not amount to an implied acceptance, but that, in order to establish such liability, it is necessary that there be a demand for the return of the draft and a refusal to comply therewith, or, in other words, a tortious refusal to return the draft.

"Some authorities cited by the defendant bank apparently sustain this proposition, but we think the great weight of authority and the better reasoning support the rule that, under statutes such as those above quoted, the failure or negligence of a person to whom a draft is presented for acceptance and payment to return the same with notice of nonacceptance within 24 hours after the presentation of the same, or within such further time as may be allowed for acceptance and payment, amounts to an implied acceptance of such draft, and such persons thereby become absolutely liable to pay the same. Wisner v. First Nat. Bank of Gallitzin, 220 Pa. 21, 68 A. 955, 17 L. R. A. (N. S.) 1266; Standard Trust Co. v. Commercial Nat. Bank, 166 N. C. 112, 81 S. E. 1074; Commercial State Bank v. Harkrider-Keith-Cooke Co. (Tex. Civ. App.) 250 S. W. 1069; 8 C. J. 306, sec. 482; Provident Securities, etc., v. First Nat. Bank of Gallitzin, 37 Pa. Super. Ct. 17; State Bank v. Weiss, 46 Misc. Rep. 93, 91 N. Y. S. 276. * * * *"

"We are of the opinion that, under section 7807, supra, of the Negotiable Instruments Act of this state, the failure or neglect of a drawee to whom a bill is delivered for acceptance to return the bill accepted or not accepted within 24 hours after such delivery, or within such other period as the holder may allow, makes the

drawee an acceptor of the same. It follows in the instant case that, the defendant bank having failed to return the draft to the plaintiff bank within 24 hours after its delivery to the drawee, or within the further period of time allowed by the holder to the drawee, the defendant bank must be deemed to have accepted the draft, and is therefore liable to the plaintiff bank for the amount thereof."

American Nat. Bank v. National Bank, 119 Okl. 149, 249 P. 424.

The law of the case is stated in 3 R. C. L. § 504, p. 1309, as follows:

"The Negotiable Instruments Law contains a section providing that, where a drawee to whom a bill is delivered for acceptance destroys the same, or refuses within 24 hours after such delivery, or within such other period as the holder may allow, to return the bill, accepted or nonaccepted to the holder, he will be deemed to have accepted the same. * * * He is granted 24 hours after delivery, and not after a demand for a return of the bill, in which he must accept or decline to honor it. The time for returning the bill to the holder does not begin to run from the demand for its return, but from the date of its delivery. The drawee must therefore state, within 24 hours from the date of delivery of the bill, whether his action be an acceptance or refusal. A constructive acceptance under the act is as effective to charge the drawee as an acceptance in writing under the section that provides a written acceptance."

One or more of the states have provided in the Negotiable Instruments Acts adopted by them that a mere retention of a negotiable instrument by the payee will not amount to an acceptance, but we have no such limitation in the Negotiable Instruments Act of this state.

We find the leading case of Wisner v. First National Bank, 220 Pa. 21, 68 A. 955, 17 L. R. A. (N. S.) 1266, cited supra, and the cases based thereon, to be more satisfactory in their reasoning and conclusions than the cases opposed, and we follow the Pennsylvania de-

cision as the proper construction to be placed upon section 137 of our Negotiable Instruments Law.

It is clear that this section as construed is the law of the case between plaintiff and defendant banks, and that, under the facts of the case, the Citizens' Bank of Campti, the drawee, is liable as acceptor of the draft sued upon to the First National Bank of Winnfield, the holder.

This liability is purely a statutory one, arising from the failure or neglect of defendant bank to return, within 24 hours after delivery, to plaintiff bank, the holder, the draft in question accepted or nonaccepted. It is plain that such liability to the holder is incurred by the drawee, although the drawer may have no funds in the bank drawn upon, and may be without authority to draw.

Such defenses, while excellent reasons for returning the draft nonaccepted within 24 hours, cannot avail defendant bank in the present case, as the liability of the drawee arises solely from operation of law, and the drawee may readily avoid payment by a return of the draft nonaccepted within the delay prescribed by the statute.

It is therefore ordered that the judgment of the Eleventh district court for the parish of Natchitoches, and the judgment of the Court of Appeal for the Second Circuit affirming said judgment on appeal, be annulled and reversed.

It is now ordered that there be judgment in favor of plaintiff, the First National Bank of Winnfield, and against defendant, the Citizens' Bank of Campti, in the full sum of $650, with 5 per cent. per annum interest thereon from September 28, 1920, until paid, and that defendant bank pay all costs.