Argued February 28, affirmed April 2, 1929.

# MT. VERNON NATIONAL BANK *v.* CANBY STATE BANK ET AL.

(276 Pac. 262.)

For appellant there was a brief and oral argument by *Mr. Philip Hammond.*

For respondents there was a brief over the name of *Mr. Frank A. McMenamin,* with an oral argument by *Mr. John J. Beckman.*

BELT, J.—This is an action in *assumpsit* to recover the amount due on a draft. Defendant appeals from a judgment entered in favor of the plaintiff. It arose as follows: A. P. Nelson sold and delivered a carload of potatoes to W. S. Hurst & Co., a corporation engaged in a wholesale produce business in Portland, Oregon. In payment therefor, the following draft was executed:

W. S. Hurst & Co.
Wholesale Produce.

No. 141.

Portland, Oregon, Apr. 28, 1926.

At Sight.

Pay to the order of E. P. Nelson,                    $1300.00

Thirteen Hundred and No/100                          Dollars

to apply on car Burbank potatoes          Car No. FSE 40678

Value Received and Charge the Same to

Account of

W. S. Hurst & Co.

To              507 Panama Bldg.          W. S. HURST & CO.

Portland, Oregon.

Payable Canby State Bank                   By W. S. HURST.

Canby, Oregon.

After plaintiff became owner and holder of the above draft by indorsement it was sent as a cash item to the Seattle National Bank and by it forwarded as such to the United States National Bank of Portland, Oregon. The Portland bank elected not to treat the draft as a cash item and this resulted in a reconcilement of account between it and the Seattle National Bank.

The United States National Bank received this instrument on May 3, 1926 and, on that date, through messenger, made a "courtesy" presentation for payment to W. S. Hurst & Co., at its place of business in Portland. The money was not obtained on the draft and Mr. Hurst, president of the company, instructed the bank to forward the bill to the defendant bank at Canby, Oregon, about twenty-five miles distant. The United States National Bank thereupon immediately forwarded the draft through the mail to the Canby State Bank. Accompanying this bill was a "collection letter" wherein the Canby State Bank was designated as payer and, among other things, was instructed, "Do not hold for convenience of

payer." The instrument was referred to as a check by the transmitting bank. No protest was requested. Upon this form letter we also note the words: "We enclose for collection and return when paid." The Canby Bank received the draft on May 4, 1926, and on May 29, 1926, returned it to the United States National Bank unpaid. In the meantime the Portland bank had sent four "tracers" making inquiry as to the status of this transaction, but received no response from the defendant. The draft was returned to the plaintiff and on June 4, 1926, was again presented through the same channel of banks to the defendant bank for payment, with directions noted on the bill to "Protest if not paid." The Canby Bank failed to have the draft protested and on June 8, 1926, again returned it to the United States National Bank unpaid.

It is the theory of plaintiff that the retention of this draft by the defendant bank, under the circumstances as disclosed in the record, amounted to an acceptance. The defendant denies acceptance and alleges affirmatively that the draft was sent to it for collection with directions that it be presented to W. S. Hurst & Co. for payment. The Canby Bank further avers that it endeavored to collect the draft in accordance with such directions but was unable to do so and thereupon returned it to the United States National Bank as requested. The cause was submitted to the court without a jury and, from the judgment entered in favor of plaintiff, the defendant appeals.

The motion for nonsuit presents the question: Is there any evidence tending to show an acceptance of this draft by the Canby State Bank? The instrument in question purports to be a draft drawn by W. S. Hurst & Co. upon itself, payable at Canby

State Bank. Although in form a draft, it has all of the essential elements of a check. Section 7977, Or. L., thus defines a check:

"A check is a bill of exchange drawn on a bank payable on demand."

When the drawer made this check payable at the Canby State Bank it was equivalent to an order on that bank to pay the same and charge to its account: Or. L., § 7879; *Maddock* v. *McDonald,* 111 Or. 448 (227 Pac. 463). It is idle for the defendant bank to contend that it retained this draft in order to present it to W. S. Hurst & Co. for acceptance. The drawer had already given an order on the defendant to pay this bill at sight or on demand.

■ We are assuming that the words, "Payable Canby State Bank" were on the draft when originally presented, although this is disputed by Mr. Graham, cashier of the defendant bank. He says: "If it had been there I am sure we would have given the matter more attention." The witness is unquestionably mistaken in his contention that these words were not on the draft. W. S. Hurst, president of W. S. Hurst & Co., admits that these words are in his handwriting. E. P. Nelson testified that they were on the draft when it was delivered to him. The cashier of the Mount Vernon National Bank also says the same was true when the draft was acquired by indorsement by that bank. The words "Payable Canby State Bank" must have been on the draft when it reached the United States National Bank. Otherwise it would not have known where to send it. At any rate, this is a question of fact which, for the purpose of determining the error assigned, must be resolved in favor of the plaintiff.

What is an acceptance? The statute answers: It is the signification of the drawee of his assent to the order of the drawer. (Or. L., § 7924.) Justice HARRIS in *Hunt* v. *Security State Bank,* 91 Or. 362 (179 Pac. 248), says:

"Acceptance of the bill of exchange is the act by which the drawee manifests his consent to comply with the request contained in the bill of exchange directed to him; and it contemplates an engagement or promise to pay." Citing in support thereof many authorities.

■ The next logical inquiry is: How may an acceptance be established? Section 7924 of the Code provides that:

"The acceptance must be in writing and signed by the drawee." This, however, is not the sole and exclusive method of proving an acceptance. The above section must be considered in connection with the following provision of the Negotiable Instruments Law (Or. L., § 7929):

"Where a drawee to whom a bill is delivered for acceptance destroys the same or refuses within twenty-four hours after such delivery, or within such other period as the holder may allow, to return the bill accepted or nonaccepted to the holder, he will be deemed to have accepted the same."

If there is any acceptance in this case it is by virtue of the section last quoted. Strange to say, this court has never heretofore been called upon to construe it. Many courts hold that the statute is merely a declaration of the common-law rule that retention of the bill in itself is not sufficient to constitute an acceptance. According to this view "refusal" to return means something more than mere inaction. Either a destruction or refusal to return, after de-

mand, must be shown. See Daniel on Negotiable Instruments (6 ed.), § 500; Brannan's Negotiable Instrument Law (4 ed.), p. 837. Also, see cases in notes to 8 Ann. Cas. 612 and 17 L. R. A. (N. S.) 1266. We are not in accord with this view although it must be conceded that it has the support of many courts of high repute. We think the Negotiable Instruments Act was designed to relieve the holder of bills of exchange from much of the uncertainty and confusion which existed at common law. As stated in the well reasoned and leading case of *Wisner* v. *First National Bank*, 220 Pa. St. 21 (68 Atl. 955, 17 L. R. A. (N. S.) 1266):

"The intention of the section in question was to expedite action by the drawee in accepting or refusing a bill, presented and retained by him, and to fix a definite time, which had previously been uncertain, in which he should act on the bill."

■ The conduct of the defendant bank in our opinion was tantamount to a refusal to return the bill. It was not its duty to protect its depositor to the prejudice of the holder of this draft. True, it was not obliged, so far as the holder was concerned, to honor the bill immediately upon presentation. The law gave it twenty-four hours in which to deliberate as to whether it would pay the draft. After the expiration of that period if it saw fit to retain the bill contrary to the explicit instructions of the collecting bank, "Do not hold for convenience of payer," the reasonable inference is that it intended to assume liability. Why did the Canby Bank ignore the four tracers sent to it by the United States National Bank, if it did not intend to accept this draft? If a bank may thus retain a negotiable instrument for twenty-four days without liability to the holder, there is not

much value in such commercial paper. The reason and logic of the Wisner case appeals to us. It would greatly extend this opinion to review the cases wherein there is such a divergence of opinion. Suffice it to say, we think the construction of this section of the Negotiable Instruments Act as announced by the Pennsylvania court is sound. In keeping with this conclusion see: *First National Bank of Winnfield* v. *Citizens Bank of Campti*, 163 La. 919 (113 South. 147); *Clarke* v. *National Bank of Montana*, 78 Mont. 48 (252 Pac. 373); *American National Bank of Ardmore* v. *National Bank of Claremore*, 119 Okl. 149 (249 Pac. 424); *Clark* v. *Northern Pac. Ry. Co.*, 55 N. D. 454 (214 N. W. 33); *Commercial State Bank* v. *Harkrider-Keith-Cooke Co.* (Tex. Civ. App.), 250 S. W. 1069; *Miller* v. *Farmers' State Bank of Arco*, 165 Minn. 339 (206 N. W. 930); *State Bank* v. *Weiss*, 46 Misc. Rep. 93 (91 N. Y. Supp. 276). The fact that W. S. Hurst & Co. did not have sufficient funds on deposit with which to pay the draft is immaterial. The liability of the defendant bank is predicated on its violation of a statutory duty.

■ We see no error in the refusal of the trial court to permit an expert witness to testify concerning the custom or practice of banks relative to a draft of this character. Custom cannot contravene the terms of a statute. Furthermore, the offer of proof was insufficient.

The judgment of the lower court is affirmed.

AFFIRMED.

COSHOW, C. J., and BEAN and BROWN, JJ., concur.