BLACKER AND SHEPARD COMPANY *vs.* GRANITE TRUST CO.

SAME *vs.* SAME.

Norfolk.   March 7, 1933. — September 11, 1933.

Present: WAIT, FIELD, DONAHUE, & LUMMUS, JJ.

*Contract*, Implied. *Conversion*, Of check. *Corporation*, Officers and agents. *Bills and Notes*, Payment on unauthorized indorsement, Liability of drawee, Check.

An action of contract by a corporation against a bank for breach of an alleged implied contract to pay only to the plaintiff, or upon its authorized indorsement, a check drawn on the bank to the order of the plaintiff by one of the bank's customers could not be maintained where the bank cashed the check upon an unauthorized indorsement of a vice-president of the plaintiff, who appropriated the proceeds thereof to his own use, and it appeared that the plaintiff was not a customer of or a depositor with the bank.

If a bank cashes a check of one of its depositors, payable to a corporation, upon an unauthorized indorsement by a vice-president of the corporation, who misappropriates the proceeds of the check; and it appears that the corporation was not a customer of or a depositor with the bank, that the bank, after paying the check, charged its customer's account therewith and returned the check to the customer, that the corporation was blameless in the transaction, and that the bank did not exercise proper care in ascertaining the authority of the vice-president, the corporation may maintain against the bank an action of tort for conversion of the check.

TWO ACTIONS OF CONTRACT OR TORT. Writs dated March 17 and August 29, 1927.

The declarations are described in the opinion.

In the Superior Court, the actions were tried together before *Williams*, J. Material evidence is stated in the opinion. The judge ordered verdicts for the defendant. The plaintiff alleged exceptions.

*E. B. Conway*, (*E. R. Dewing* with him,) for the plaintiff.

*J. E. McConnell*, for the defendant.

WAIT, J. These actions in contract or tort are before us upon exceptions claimed by the plaintiff to orders directing verdicts for the defendant. They were brought by the payee of certain checks against the bank on which the checks were drawn, which had made payment upon forged unauthorized indorsements and had returned the checks to the makers. The evidence in substance was as follows: In 1924 and until his death in May, 1926, one Barker was vice-president and a director of the plaintiff, and owner of one hundred ninety-eight of the eight hundred shares of its capital stock. The by-laws conferred on the vice-president authority to "prove claims in bankruptcy or insolvency, for the company, and shall have such further powers and perform such other duties as the board of directors may require." A vote of the directors passed on February 27, 1922, provided that Barker be empowered so long as he continued to hold office as vice-president "to assign, to discharge, to foreclose by entry or by sale and to make partial releases of any mortgages held by the company, and further to affix the corporate seal and to sign, acknowledge and deliver in the name of and on behalf

of this company any instruments necessary or proper to carry out such purposes." No other records of grants of authority appear. The vote of February, 1922, was recorded in the Norfolk registry of deeds. The plaintiff was engaged in the sale of lumber. Barker was in charge of a branch office in Quincy. He solicited and took orders for lumber for which bills were made up, after the orders had been filled and were sent to the main office in Boston for audit. Barker collected payments and almost daily brought money so received to the main office. He had a right to make contracts of sale of lumber for the company and bought both for the main and Quincy offices about two thirds of all lumber purchased for those offices. He directed the work of some eight or ten employees of the company at Quincy. Except for the duties of Morse, the credit man, the whole business at the Quincy office was in his charge subject to approval of Shepard, the president, treasurer and clerk of the corporation. It was a practice in furnishing lumber for buildings and houses to take mortgages to secure payment for lumber sold to customers. He had checking accounts of his own in two banks. The plaintiff had no account with the defendant bank. On different occasions in 1924 and 1925 Barker cashed over the counter of the defendant bank checks drawn by depositors in the bank to the order of the plaintiff, which had been delivered to him by the makers in payments for lumber sold by Barker for the account of the plaintiff to the makers of the checks. Before being cashed the checks had never been in the hands of anyone for the plaintiff other than Barker. Barker never turned in to the plaintiff the money obtained by him on the checks. The bank charged its depositors' accounts, held the checks which it had cashed, and returned them in the usual course of its business to the several makers. The checks were indorsed " Blacker & Shepard Co. by Herbert S. Barker, Vice Pres." The bill of exceptions does not disclose whether they were in the possession of the plaintiff when introduced in evidence at the time of the trial.

The declarations contained a count in contract for each

check, which alleged that a named debtor of the plaintiff, having a checking account with the defendant, drew a check on the defendant payable to the plaintiff and delivered it to Barker to reduce the drawer's debt to the plaintiff; that without authority Barker presented the check to the defendant; that the defendant cashed the check, paid the proceeds to Barker and thereby broke its implied contract to pay such proceeds only to plaintiff, the payee, or its duly authorized agent; and that the plaintiff was damaged thereby in the amount of the face of the check with interest. Counts in tort for each check alleged the conversion of the several checks and sought the same damage as the contract counts.

There is no claim that Barker was not authorized to receive the checks from the makers in reduction of their several debts to the plaintiff, or that the makers did not deliver them to him as the representative of the plaintiff, duly authorized to receive them. In those circumstances the checks became the property of the plaintiff. Its property was stolen by Barker. It seeks, by this action at law, to shift its loss upon the defendant bank. The practical question for decision is, can it do so?

It is clear law, we think, that there is no such relation of contract between the bank and the plaintiff as the contract counts of the declaration assert. The bank has not made, by implication, any promise to the payee to pay only upon the payee's authorized indorsement. *Carr* v. *National Security Bank*, 107 Mass. 45, so decides. It is also the necessary implication from the negotiable instruments law, which, by G. L. (Ter. Ed.) c. 107, § 212, provides: "A check of itself does not operate as an assignment of any part of the funds to the credit of the drawer with the bank, and the bank is not liable to the holder unless and until it accepts or certifies the check"; and, by § 150, enacts that "A bill of itself does not operate as an assignment of the funds in the hands of the drawee available for the payment thereof and the drawee is not liable on the bill unless and until he accepts it." Here there has been no certification or acceptance. Payment of the check, cashing it on presentment,

is not an acceptance.  *South Boston Trust Co.* v. *Levin,* 249 Mass. 45, 48, 49.

We need not consider the vexed question whether there is a liability in *indebitatus assumpsit* on a count for money had and received, as no such count is declared upon.  (See for discussions and collection of cases, 38 Harv. Law Rev. 864, *et seq.*; 5 R. C. L. 566, § 89, *et seq.*; *California Stucco Co. of Washington* v. *Marine National Bank,* 148 Wash. 341.)

Recovery, if any is possible, under the declaration must be had upon the counts in tort.  No case directly in point is called to our attention and we find none in our decisions; but the principles acted upon in *A. Blum Jr.'s Sons* v. *Whipple,* 194 Mass. 253, *Jordan Marsh Co.* v. *National Shawmut Bank,* 201 Mass. 397, *Franklin Savings Bank* v. *International Trust Co.* 215 Mass. 231, *Quincy Mutual Fire Ins. Co.* v. *International Trust Co.* 217 Mass. 370, sustain the position that there has been a conversion here.  The taking of the checks from one with no authority to deliver them, and the ultimate return of the checks to the makers, constitute a dealing with them as an owner and an interference with the possession of the rightful owner.  *Franklin Savings Bank* v. *International Trust Co.* 215 Mass. 231.  See also collection of cases elsewhere, 69 Am. L. R. 1078, note, and 38 Harv. Law Rev. 881, note 88.

In *Shepard & Morse Lumber Co.* v. *Eldridge,* 171 Mass. 516, a case on its facts much like the one before us but brought against the maker of checks rather than against the drawee bank, it was held that evidence with reference to negligence was wrongly excluded.  In others of the cases cited above, negligence has been considered in reaching the decision.  *First National Bank of Danvers* v. *First National Bank of Salem,* 151 Mass. 280.  A bank is not to be held liable for payment of checks where carelessness of the party seeking to establish liability has contributed in bringing about the loss.  *National Bank of North America* v. *Bangs,* 106 Mass. 441.  This is based upon the principle of equity that as between those equally blameless a loss should remain where it falls.  In the case before us the makers of the checks are without fault.  They delivered their checks

in good faith to a person authorized to receive them. By bringing this suit the plaintiff has ratified the payment. The plaintiff is blameless; for nothing appears to show cause for suspicion that its vice-president was defrauding it, or negligent methods of business. The bank has acted, so far as appears, in good faith; but, in cashing checks at the request of Barker, on his indorsement as vice-president, about whose authority it was ignorant and made no inquiry, it was not using proper care. Even authority to receive payments from debtors, and, generally, to transact business for the plaintiff would not empower the officer to indorse checks. *Coleman* v. *Seattle National Bank*, 109 Wash. 80. *Arcade Realty Co.* v. *Bank of Commerce*, 180 Cal. 318. It cannot charge the amount recovered against it to the several makers of the checks. It has already made its charge against them, and they have no equity to recover those charges since they owed to the plaintiff the amount of their checks. If we were to weigh negligence we should be compelled to regard the defendant's position as showing least excuse. Recovery was possible on the tort counts. The rulings directing verdicts for the defendant, therefore, were error. No question of amount of damages was argued.

*Exceptions sustained.*