NORTON URWILLER, APPELLANT, v. PLATTE VALLEY STATE BANK, A CORPORATION, APPELLEE.

83 N. W. 2d 88

Filed May 17, 1957. No. 34151.

*Moller R. Johnson,* for appellant.

*Richard A. Dier,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

WENKE, J.

This is an appeal from the district court for Buffalo County of an action brought therein by Norton Urwiller against the Platte Valley State Bank of Kearney, Ne-

braska, to recover the sum of $2,491.11. The right to recover is claimed under and by virtue of the provisions of section 62-1,137, R. R. S. 1943, of the Uniform Negotiable Instruments Law. The action is based on a check issued by Ira McCord on December 8, 1953, to plaintiff on McCord's account in the defendant bank. The parties waived their right to a jury trial and submitted the matter to the trial court. After hearing the evidence the trial court rendered a judgment dismissing plaintiff's petition. Plaintiff thereupon filed a motion for new trial and this appeal is from the order overruling it.

Appellant maintains a place of business at Ravenna, Nebraska, where he engages in buying and selling livestock, his principal business being the direct buying of hogs. Ira McCord of Kearney, Nebraska, a licensed hog buyer, was a regular customer of his and on Tuesday, December 8, 1953, purchased of appellant 50 head of hogs and a small amount of bedding and feed, shipping the hogs to San Francisco, California, that evening. In payment of his purchase McCord issued to appellant his check on appellee in the sum of $2,491.11. On the following day, Wednesday, December 9, 1953, appellant's wife deposited this check to appellant's account in The Ravenna Bank, of which bank appellant was a regular customer. Appellant's wife deposited it, with other checks, in the regular course of business and gave the Ravenna bank no special instructions in regard thereto. Consequently the bank forwarded the check for collection in the usual course of business through regular channels, doing so by sending it in the mail to its correspondent bank in Lincoln, Nebraska. The bank in Lincoln sent it by mail to the Omaha branch of the Federal Reserve Bank which, in turn, sent it by mail to appellee for payment.

The check was received by appellee in a cash letter from the Omaha branch of the Federal Reserve Bank during business hours on Saturday, December 12, 1953, Saturday being a regular business day. The cash letter

contained no special instructions as to this check. The check was proofed on the day it was received and posted for action on the following business day, which was Monday, December 14, 1953. On Monday it was decided not to pay the check, but mark it for "return," because the drawer thereof did not have sufficient funds on deposit in his account with appellee with which payment could be made, and this was true at all times between December 12 and 18, 1953, both days included. Although marked for return on Monday, December 14, 1953, the actual return thereof was not made to the Federal Reserve Bank until Wednesday, December 16, 1953. This delay in return was caused by the fact that bank examiners came and assumed control of all the records of the bank, including cash items, on Monday morning, December 14, 1953, and did not return such records to those in charge of the bank until they had been checked and proved. Appellant was advised by the Ravenna bank late Thursday afternoon, December 17, 1953, of the fact that payment of the check had been refused although the check was not actually returned to him until Saturday, December 19, 1953. The check has never been paid. Neither has a judgment for the amount thereof been paid which appellant has obtained against McCord.

The record does not show the delay in the return of the check to the Federal Reserve Bank from Monday to Wednesday was due to any fault on the part of appellee, nor is there any evidence that appellant was damaged in any way because thereof. However, appellant contends that under the provisions of the statute hereinbefore cited that retention of a check by a drawee bank for more than 24 hours after it is presented to it for payment constitutes an acceptance of the instrument so that the drawee bank is bound to pay it; that is, under the statute a failure of the drawee bank to either remit the proceeds of or return a check to the holder within 24

hours after it has been received for payment constitutes acceptance.

Chapter 62, article 1, R. R. S. 1943, contains all the legislative enactments relating to the Uniform Negotiable Instruments Law. Thereunder a check is classified as a bill of exchange drawn on a bank payable on demand and, except as therein otherwise provided, the provisions thereof applicable to bills of exchange payable on demand apply to checks. § 62-1,185, R. R. S. 1943. However, a check of itself does not operate as an assignment of any part of the funds to the credit of the drawer with the bank and the bank is not liable to the holder unless and until it accepts or certifies the check. § 62-1,189, R. R. S. 1943. The same is true of a bill of exchange as it relates to funds in the hands of the drawee available for the payment thereof. § 62-1,127, R. R. S. 1943. By accepting the instrument the acceptor agrees that he will pay it according to the tenor of his acceptance. § 62-162, R. R. S. 1943. Presentment for acceptance must be made by or on behalf of the holder at a reasonable hour on a business day to the drawee or some person authorized to accept or refuse acceptance on his or its behalf. § 62-1,145, R. R. S. 1943.

Division (j) of Chapter 62, article 1, R. R. S. 1943, which includes sections 62-1,132 to 62-1,142, both inclusive, deals with "Acceptance." Section 62-1,132, R. R. S. 1943, thereof provides the acceptance must be in writing and signed by the drawee. Section 62-1,136, R. R. S. 1943, provides the drawee is allowed 24 hours after presentment in which to decide whether or not he will accept the bill. Section 62-1,137, R. R. S. 1943, on which appellant relies, provides: "Where a drawee to whom a bill is delivered for acceptance destroys the same, or refuses within twenty-four hours after such delivery, or within such other period as the holder may allow, to return the bill accepted or nonaccepted to the holder he will be deemed to have accepted the same." It will be noted this section applies when "a bill is de-

livered for acceptance" - not payment, the latter being the situation here for at no time was the check ever presented to appellee for acceptance.

Presentment for payment and presentment for acceptance are two different acts well known to the law of negotiable instruments. See, First Nat. Bank of Omaha v. Whitmore, 177 F. 397; First Nat. Bank of Goree v. Tally, 115 Tex. 591, 285 S. W. 612; Hunt v. Security State Bank, 91 Or. 362, 179 P. 248; First Nat. Bank of Quitman v. Wood County (Tex. Civ. App.), 294 S. W. 324; First Nat. Bank of Washington v. Whitman, 94 U. S. 343, 24 L. Ed. 229; First Nat. Bank v. Brule Nat. Bank, 38 S. D. 396, 161 N. W. 616, 12 A. L. R. 1079; Hibbard v. Parciak, 94 Conn. 562, 109 A. 725; Blacker & Shepard Co. v. Granite Trust Co., 284 Mass. 9, 187 N. E. 53; State Bank of Chicago v. Mid-City Trust & Savings Bank, 295 Ill. 599, 129 N. E. 498, 12 A. L. R. 989. As stated in First Nat. Bank of Goree v. Tally, *supra*: "Presentment for payment and presentment for acceptance are two different acts well known to the law of negotiable instruments, and the distinction is made clear by the terms of the Negotiable Instruments Act. The difference between the object and effect of presentation for these respective purposes is very marked. The phrases themselves suggest the material distinction. 'Payment' and 'acceptance' when applied to commercial paper mean very different things. Payment extinguishes the debt and puts an end to the paper evidencing the same, while acceptance has the very opposite effect. It creates a new liability upon the part of the acceptor, and gives new life to the instrument."

We do not think the section relied on has any application to the factual situation here presented where the check was presented to appellee for payment and not for acceptance. As stated in First Nat. Bank of Winnsboro v. First Nat. Bank of Quitman (Tex. Comm. App.), 299 S. W. 856: "* * * 'retention for more than 24 hours by a bank of a check forwarded to it for collection and

payment' does not render the bank liable as an 'acceptor' under that law, for the reason that the sections relied upon for that purpose have no application to such a transaction." See, also, Mitchell Livestock Auction Co. v. Bryant State Bank, 65 S. D. 488, 275 N. W. 262.

We recognize that courts are divided on this question. See, Mt. Vernon Nat. Bank v. Canby State Bank, 129 Or. 36, 276 P. 262; American Nat. Bank v. National Bank of Claremore, 119 Okl. 149, 249 P. 424; First State Bank of Talihina v. Black Bros. Co., 187 Okl. 124, 101 P. 2d 802; First Nat. Bank of Winnfield v. Citizens' Bank of Campti, 163 La. 919, 113 So. 147. As stated in First State Bank of Talihina v. Black Bros. Co., *supra*: "The defendant, however, takes the position that when, as in this case, a check is presented to a drawee bank, the action contemplated on the part of the bank is that of payment, and that the term 'acceptance' is contra-distinguishable and not applicable to the transaction involved, and that therefore section 11436, supra, has no application to the case at bar. The argument is not without supporting authority. * * * Indeed from the annotation on the subject appearing in 63 A. L. R. at page 1140, it would appear that the division of authority upon the point is about even."

The opposite view is fully discussed in Wisner v. First Nat. Bank of Gallitzin, 220 Pa. 21, 68 A. 955, 17 L. R. A. N. S. 1266. However, we are not willing to construe a statute so as to impose a penalty upon the banks of this state, such as we are here asked to do, unless the Legislature uses language clearly so providing. In the absence of a statutory right appellant is left to his common law right for either a breach of contract or for a tortious breach of a duty. Henefin v. Live Stock Nat. Bank, 116 Neb. 331, 217 N. W. 91, 58 A. L. R. 758; Omaha Nat. Bank v. Kiper, 60 Neb. 33, 82 N. W. 102.

As stated in 7 Am. Jur., Banks, § 660, p. 479: "A collecting bank is, however, as a general rule, under no absolute obligation to collect the paper intrusted to it,

but is required to use only reasonable care and diligence in making the collection; if it does so, it incurs no liability to its customer for a loss resulting from a failure to make the collection."

And in 7 Am. Jur., Banks, § 694, p. 501, it is said: "According to the overwhelming weight of authority, the measure of damages for breach of duty by a bank in respect of the collection of the commercial paper intrusted to it is the actual loss suffered by the owner of the paper in consequence of the negligent misconduct or default of the bank, * * *."

Since appellant did not bring himself factually within either of the latter, we find the trial court was correct in dismissing his petition. We therefore affirm its action doing so.

AFFIRMED.