**GENERAL FINANCE CORPORATION OF FLORIDA, Appellant,**

v.

**CENTRAL BANK AND TRUST COM-PANY et al., Appellees.**

**No. 17370.**

United States Court of Appeals
Fifth Circuit.

March 10, 1959.

Rehearing Denied April 14, 1959.

Edward McCarthy, Anderson M. Foote, Jr., Elliott Adams, Jacksonville, Fla., McCarthy, Lane & Adams, Jacksonville, Fla., for appellant.

Jerry B. Crockett, Scott McCarthy, Preston, Steel & Gilleland, Miami, Fla., for The First Nat. Bank of Miami, appellee.

Richard J. Horwich, Pallot, Cassel & Marks, Miami, Fla., for Central Bank & Trust Co., appellee.

Before RIVES, TUTTLE and CAMERON, Circuit Judges.

TUTTLE, Circuit Judge.

This appeal from a judgment in favor of two defendant banks presents for construction several sections of the Florida Banking Laws. More precisely we are to decide whether Section 676.55, F.S.A., which has no counterpart in the Uniform Negotiable Instruments Law, and Sections 676.07, 676.08 and 676.48, F.S.A.,[1] place upon a drawee or payor bank the duty to return a check drawn on it not later than the day following its receipt to prevent its being held to have accepted or finally paid the item.

The trial court entered summary judgments for the defendants on the basis of an amended complaint and affidavits filed by the defendants in support of their motions for summary judgment. From the allegations of the complaint, either admitted or not controverted by the defendants, and for the purpose of reviewing the action of the trial court in the present state of the pleadings, the following facts may be taken as true:

The appellant, on July 17, 1957 (Wednesday), deposited and received credit in its account in the First National Bank of Miami for a check of one Clausi in the amount of $28,300. The check was drawn on Clausi's account in the Central Bank & Trust Company. On July 18th (Thursday) First delivered the check to Central for collection and the latter paid the item conditionally by entering a bank credit in favor of First. On July 22nd (Monday) Central returned the items to First over the objection of appellant. At no time between July 18 and July 22, 1957, "was the account at Central Bank & Trust Company of Anthony Clausi * * * sufficient in collected funds to cover the payment of check 10170 drawn on that account to G.F.C. (General Finance Corporation) on July 15, 1957 in the amount of $28,300." Upon the return of this item the First National Bank charged the sum of $28,300 against the account of appellant. There was in force at the time of the making of this deposit by appellant a deposit contract between it and First providing in essence that all deposits were made for collection only and all credits were subject to "final payment in cash or solvent credits."

Appellant objected to the charging of this item to its account, asserting that under the Florida statutes the holding of the check by the payor bank beyond the day after it was received by it, constituted final payment by Central Bank under the Florida statute Section 676.-55 F.S.A.[2] Appellant also contended

---

1. These last three sections are sections 136, 137 and 185 of the Uniform Negotiable Instruments law.

2. This statute, together with its caption, is as follows:
 "An Act Relating to Checks or Drafts Received for Collection or Deposit by

that by virtue of the provisions of Section 185 [3] of the Uniform Negotiable Instruments Law, enacted as Section 676.-48 of the Florida Statutes, F.S.A., a check is treated for the purposes of the N.I.L. as a bill of exchange, and that by virtue of Sections 136 and 137 of the N.I.L. (676.07 and 676.08, F.S.A.)[4] a bill of exchange retained by the drawee longer than 24 hours without returning it to its correspondent is deemed to have been accepted by the drawee.

At the time of the adoption of Section 676.55 by the Florida legislature in 1945 the Florida courts had not construed the relevant sections of the N.I.L. in connection with the liability of a drawee bank as to either checks or bills of exchange which were neither charged to the drawer's account, formally accepted nor returned within 24 hours. The state of the law in other jurisdictions which had adopted these same sections of the N.I.L. was not uniform. In commenting on the appellant's appraisal of the state of the law generally as favoring its contention, the appellee, Central, in its brief, makes this partial concession:

> "Taking uniformity first, the most that might be said is that a slight majority of jurisdictions guided only by court decision hold that mere retention of an instrument presented for payment results in liability under § 137 of the N.I.L."

Commenting on the state of the jurisprudence generally, appellant quotes from Beutel's Brannan's Negotiable Instruments Law, 7th Edition, where on page 1249 it is stated:

> "These cases [holding the drawee bank liable] represent the overwhelming weight of authority under the Act, and in the interest of uniformity they should be followed."

We have carefully read all the cases cited by the parties in their briefs and some additional decisions touching on the question here involved. These cases present several different issues that remained in an uncertain state, so far as the Florida law was concerned, prior to the adoption of the amendment in 1945.

In Wisner v. First National Bank of Gallitzin, 220 Pa. 21, 68 A. 955, 957, 17 L.R.A.,N.S., 1266, the court had before it for construction Sections 136, 137 and 185, N.I.L., supra, footnotes 3 and 4. The court held against the drawee bank on two critical points: it held that a check was comprehended by Sections 136 and 137, and that mere retention of the check beyond the 24 hours limit amounted to a "refusal to return" the item under Section 137. The opinion has also been construed generally as holding that it is immaterial whether the check is presented to the drawee bank for acceptance (the words of the statute) or for payment,[5] (the usual situation with respect to checks.)

Solvent Drawee or Payor Banks, Defining the Acts or Events Constituting Payment or Acceptance of Such Items. Be It Enacted by the Legislature of the State of Florida:

"Section 1. A check or draft received for deposit or collection by a solvent payor or drawee bank shall not be deemed paid or accepted until the amount is charged to the account of the maker or drawer unless, though not so charged, such item is retained by the drawee or payor bank longer than the end of the business day following its receipt. * * "

3. Section 185, N.I.L., is as follows:
"A check is a bill of exchange drawn on a bank payable on demand. Except as herein otherwise provided, the provisions of this law applicable to a bill of

exchange payable on demand apply to a check."

4. "F.S.A. 676.07 Time allowed to accept.
"The drawee is allowed twenty-four hours after presentment in which to decide whether or not he will accept the bill; but the acceptance, if given, dates as of the day of presentation."
"F.S.A. 676.08 Drawee destroying bill.
"Where a drawee to whom a bill is delivered for acceptance destroys the same, or refuses within twenty-four hours after such delivery, or within such other period as the holder may allow, to return the bill, accepted or nonaccepted, to the holder, he will be deemed to have accepted the same."

5. The holding of the court requires the conclusion that it disregarded any dis-

This case, decided in 1908 has become the leading case in the field, and by 1945 the majority of the courts which had the same issues to decide had accepted it as the proper construction to be placed on these sections of the Negotiable Instruments Law. It was both criticized and praised by the text writers. See Paton's Digest of Legal Opinions 12, §§ 7–2, 14–12, Michie, Banks and Banking, Vol. 5A, 520–521, and Zollman, Banks and Banking, Vol. 6, pp. 173–175, for criticisms. The Fourth Edition of Brannan's Negotiable Instruments Law seems to have criticized it, but the Seventh Edition, edited by Beutel, at page 1249, says:

"As pointed out in the fourth edition of this book at p. 983 ff, the act, in sections 136 and 137, covers only presentment for acceptance, and presentment for payment is not mentioned. But it does not necessarily follow that because the act is silent as to presentment for payment that [sic] the result should be different from the case of presentment for payment. The considerations involved in both cases are the same, the act in other sections has provided that upon presentment immediate action must be taken, the drawee has 24 hours in which to accept, secs. 136, 137 * * *. Although the act seems silent on the point of how long the drawee may take, the rule of the Wisner case fills this gap by requiring promptness on the part of the drawee, thus he must return the instrument or be liable for its face value as acceptor."

Cases cited by Beutel's Brannan as following the principles laid down in the Wisner case include American Nat. Bank of Ardmore v. National Bank of Claremore, 119 Okl. 149, 249 P. 424; Blackwelder v. Fergus Motor Co., 80 Mont. 374, 260 Pa. 734, 740; Clark v. Northern Pac. R. Co., 55 N.D. 454, 214 N.W. 33; Clarke v. National Bank of Montana, 78 Mont. 48, 252 P. 373; First National Bank v. Citizens Bank of Campti, 163 La. 919, 113 So. 147; First State Bank of Talihina v. Black Bros. Co., 187 Okl. 124, 101 P.:2d 802; McLaughlin's Store v. Copeman, 50 Idaho 214, 294 P. 523; Miller v. Farmers State Bank of Arco, 165 Minn. 359, 206 N.W. 930; Mount Vernon Nat. Bank v. Canby State Bank, 129 Or. 36, 276 P. 262, 63 A.L.R. 1133.

A reading of these cases discloses that while they all express reliance on the Wisner decision, some deal with somewhat different facts. Although in some there was a lapse of greater time, in some the instruments were drafts rather than checks; and in some the presentment was for acceptance rather than payment, these different facts seem not to have been thought by the several courts to be a significant factor in arriving at their decisions.

Some jurisdictions, as has been indicated, have arrived at the opposite conclusion; · some because the check presented for payment is not, within the terms of the statute, a bill presented for acceptance. See First National Bank of Goree v. Talley, 115 Tex. 591, 285 S.W. 612,[6]

---

tinction between presentment for acceptance and presentment for payment. Although the court concluded its discussion of the law by saying: "We are of the opinion that under section 137 of the negotiable instrument law of this state, the failure or neglect of a drawee to whom a bill is delivered *for acceptance* to return the bill, accepted or nonaccepted, to the holder within 24 hours after delivery, makes the drawee an acceptor of the bill," the facts in the case are that, as stated earlier in the opinion, "The plaintiff sent these checks *for collection* to the defendant bank," and the opinion finally concluded: "It therefore

follows in the case in hand that, the defendant bank having failed to return the five checks to the collecting bank within 24 hours after their delivery to the drawee, the latter must be deemed to have accepted the checks, and is therefore liable to the plaintiff for the amount of them." First National Bank of Gallitzin, 68 A. 955, 959, 960. (Emphasis added.) Thus, although the opinion speaks of "a bill delivered for acceptance" its decision applied the principle to "checks sent for collection."

6. This distinction was held, in Tyler Bank & Trust Co. v. Saunders, Tex.Civ.App.,

and Urwiller v. Platte Valley State Bank, 164 Neb. 630, 83 N.W.2d 88, and some because they consider a "failure" to return is not the same as a "refusal," which is the word used in Section 137. See Mitchell Livestock Auction Co., Inc. v. Bryant State Bank, 65 S.D. 488, 275 N.W. 262.

Both Central Bank and appellant say that the Florida decision most relevant to the issue at bar is Bank of Blountstown v. Cross, 132 Fla. 392, 181 So. 390, 394. However, this case, as recognized by both parties, is significant only because of the statements of general principles which it contains, since the facts are not similar. Appellant relies on a quotation by the Florida court from a California case, Ocean Park Bank v. Rogers, 6 Cal.App. 678, 92 P. 879, in which this language appears:

> "If, however, at the close of the banking hours on the day when the check is presented the account of the drawee is insufficient to pay it, the bank must then elect to either pay the check itself, charging the amount thereof to the account of the drawer as an overdraft, or return the check to the party presenting it as unpaid for want of funds."

In support of its contention that the payment by crediting First National's account was only conditional and subject to "final payment," Central's brief quotes:

> "It is not contended that plaintiff in the court below deposited any money in the Bank of Blountstown. The records show that plaintiff deposited a check drawn on the bank by one Jack Ravell in the sum of $1,459.85; that the deposit of the check was made under a contract contained in the deposit slip; that

the deposit of the check was made with the cashier after banking hours, and, therefore, was not entered on the books of the bank as a credit to the account of the plaintiff, nor as a debit against the account of the drawer of the check.

> "It, therefore, must follow that the check was received by the cashier and delivered to him by the depositor under the terms and conditions named in the deposit slip. This was the contract between the bank and the would-be depositor.

> "It must be borne in mind, as hereinabove stated, that this deposit was not in money, but was only a check, and, therefore, was subject to countermand at any time before payment or before its *payment* had been *assumed* and *promised* by the bank as by certification or *otherwise*.[7] (Emphasis added.)

This, then, was the state of the Florida jurisprudence at the time Section 676.55, supra, footnote 1, was enacted. This section is codified with the banking laws of Florida and immediately follows the provisions of the statute which embody the sections of the N.I.L., including those heretofore discussed. As is apparent from the face of the section, it is negative in form—"A check * * * *received* for *deposit or collection* by a solvent payor or drawee bank shall not be deemed *paid* or *accepted*[8] until the amount is charged to the account of the maker * * * unless, though not so charged, such item is retained by the drawee or payor bank longer than the end of the business day following its receipt." (Emphasis added.)

 Being negative in form, it must be that the legislature was of the view

---

308 S.W.2d 90, to have been abolished by an amendment to the Texas statute following the Bank of Goree case.

**7.** Although not commented on by appellant, it would seem that the italicized words support its contention that the terms of the deposit certificate relating to final payment may be satisfied by such

conduct of the drawee as would warrant the conclusion that payment could be "assumed and promised."

**8.** This, it seems, eliminates any distinction which might otherwise exist as between a "presentment" for "acceptance" and a "presentment" for "payment"

874

that without this section the law was that a check received for deposit or collection would be deemed paid or accepted without being actually charged to the account of the drawer. We have seen that this would be the law under Sections 136 and 137, N.I.L., by the minority as well as the majority view, since destruction of the item, or a positive refusal within 24 hours to return the item would, under any view of the matter, constitute acceptance. Now, under this section there is no payment or acceptance without an actual charge to the account of the drawer until the end of the business day following receipt of the item, thus eliminating the 24 hour rule as to such an item, and settling by statute the dispute as to the proper construction of Section 137 by using the word "retain" instead of "refuse to return."

■ We think, in effect, the legislature, recognizing the ambiguity existing under Sections 136 and 137, as shown by the conflicting decisions, determined to set the matter at rest by saying that a check received by a solvent drawee bank for deposit or collection (not for acceptance) has the option of charging it against the drawer's account, paying it and carrying it as an overdraft or returning it by the end of the business day following its receipt, in default of which it will be held liable as having paid it. This view is at least colorably supported by the title of the Act: "An Act Relating to Checks and Drafts Received for Collection or Deposit by Solvent Drawee or Payor Banks, Defining the *Acts* or *Events Constituting Payment* or Acceptance *of Such Items.*" (Emphasis added.)

Appellees here contend that this statute is not at all what its title calls it, but is a deferred posting statute. We understand this argument to be that,

without some statutory provision to the contrary, the payment of a check either by cash or entry of a credit to the amount of the depositor or collecting bank (here the credit to First entered by Central on Thursday) would amount to irrevocable final payment by the drawee, and thus it would greatly interfere with prompt banking practices in today's commercial world if the state of the drawer's account must be carefully checked and a simultaneous charge be posted there when cash or credit was given to the depositor or collecting bank; that to prevent this as between a bank and its depositor the deposit contract was devised, thus making the deposit subject to final payment; and as between payor and the drawer a deferred posting statute made the transaction subject to reversal until an actual charge to the account of the drawer was "posted" on the books.

■ It may well be that the legislature did intend to accomplish this objective in adopting Section 676.55; and undoubtedly it accomplished this result. Appellant concedes, and we think necessarily, that the credit given to First by Central on Thursday on account of this check was subject to timely reversal upon ascertainment that the Clausi account could not respond to the amount of the check. But the difficulty of Central's theory is that the act which gave the right to deferred posting also put a limit on the time during which the delay could be extended. This limit was stated in the Act in terms that may be restated as follows: "The immediate entry of a credit, which would be final payment but for this act, shall no longer be final payment if the drawee bank recalls the credit before the end of the day following the day of receipt of the item; otherwise, the passage of such time accompanied by retention of the item by the drawee *does* constitute final payment." [9]

9. Central, in its brief, states that "a deferred posting statute permits a bank acting before the end of the next business day to revoke the credit. If the bank acts too late, it has no defense under the deferred posting statute and the situation reverts to the pre-existing law of

negotiable instruments and the rule of payment and acceptance," and yet in explaining the purpose of such a statute the brief quotes 2 Paton's Digest, 1376, as saying: "The majority of courts hold that credit of an item on the same bank (here, credit by Central for the check

We think the case of Wisner v. First National Bank of Gallitzin, supra, is well reasoned, and that the comments in Beutel's Brannan's Negotiable Instrument Act are also persuasive as is the fact that a clear majority of the court decisions of other jurisdictions are in accord. We think, however, that we need decide no more than that the law as it stood in Florida prior to 1945 was ambiguous. We need not decide whether, absent this new section, the N.I.L. would be held by the Florida courts to reach the result of the majority or of the minority. We hold that as to instruments like the one here sued on the legislature resolved the doubt by the enactment of Section 676.55.

■ The same result follows if the legislature was concerned only with passing a deferred posting statute. There could be no purpose in such a statute unless, without it, such a credit as here given would amount to payment. Thus in order to avoid the effect of this rule of payment Central must look to the deferred payment statute, as it calls Section 676.55. But on the facts of this record it did not come within its ameliorating terms, because it fit rather into the exception "unless * * * such item is retained by the drawee or payor bank longer than the end of the business day following its receipt * * *"

■ Since we hold that the retention of the check longer than the period allowed by the Florida statute constituted payment then this satisfied the conditions of the deposit contract between First and appellant, and when First, after payment, sought to charge the item to appellant's account, it was not legally permissible for it to do so and it also became liable to appellant in the action that followed.

We conclude that the appellant's amended complaint asserted a good cause of action against both defendants, and

nothing asserted in the motions for summary judgment or supporting affidavits constituted a legal defense to the claim as alleged. Although we have assumed the truth of the allegations of the complaint here, the defendants have not yet answered, and they should have the opportunity to do so if there are any allegations we have assumed to be true as to which there is some dispute.

The judgment is Reversed and the case Remanded for further proceedings not inconsistent with this opinion.

CAMERON, Circuit Judge, dissents.

On Petition for Rehearing.

Rehearing denied.

CAMERON, Circuit Judge, dissenting.

---

drawn on it) is final and cannot be charged back, notwithstanding such item is found not good upon examination of the account." Undoubtedly, if the Florida legislature intended to enact a deferred posting statute it did so to alleviate this

strict majority rule. A failure to qualify for the protection of the act, as Central concedes was the case here, threw it back to the strict rule which it has quoted in its brief.